Tucker vs. Grover. [First Case.]

*March 19 — April 8, 1884.*

| 60 | 233 |
|----|-----|
| 103 | 184 |
| 103 | 185 |

*(1) Recovery of money paid on void contract: Fraud of plaintiff in obtaining money no defense. (2) Receipt. (3) Demand.*

1. G. purchased land but retained $1,000 of the purchase price, that being the amount to be paid by the vendors to T. as a commission on the sale, and it being agreed between G. and T. that the former should retain such amount to apply as part payment upon a parol contract for the sale of a portion of the land by G. to T. *Held.* that T. might recover said sum, after demand, as money paid upon a void contract, and that G. could not defend upon the ground that T. had obtained such commission by a fraud upon the original vendors.

2. G. had given T. a receipt by the terms of which he was to pay T. $1,000 upon certain conditions. This receipt was to be used in the negotiations for the purchase of the land by G. and to induce the vendors to allow the $1,000 to T. as his commission, and neither party considered it as an agreement by which either was to be bound. *Held*, that such receipt was no defense to the action to recover the $1,000 applied on the void contract.

3. A demand for the repayment of money paid upon a contract void under the statute of frauds is sufficient notice that the party making it will not perform the contract. It need not be put upon the ground that the contract is void under the statute, but it must so refer to the money that the defendant may understand that it is the money paid on the void contract.

APPEAL from the Circuit Court for *Jefferson* County.

The case is thus stated by Mr. Justice TAYLOR:

" Action to recover the sum of $1,000 and interest thereon, which the plaintiff alleges he paid or deposited with the

defendant as a part payment of the purchase money on a parol contract for the purchase of an undivided fourth part of a tract of land described in the complaint. The plaintiff also alleges that he has always been willing to perform said parol contract on his part, but that the defendant has refused at all times to perform the same; and that on or about the 15th day of November, 1874, he demanded of the defendant the payment of the said $1,000 so paid or deposited with him upon such contract. The defendant answered, denying generally the allegations of the complaint.

"The evidence given on the trial on the part of the plaintiff tends to show the following state of facts: That the plaintiff and one McArthur were engaged in lumbering and hunting up pine lands. They had ascertained that some persons living in the east were the owners of a large tract of pine lands situate in this state, and which are described in the complaint; that the owners of said lands desired to sell them; and that a man by the name of Hitchcock was their agent to make such sale. It would seem, from the evidence, that Hitchcock, as agent for the owners, had employed the plaintiff to assist him in making such sale, and that the plaintiff and McArthur were both anxious to acquire an interest in said lands, but had no present money to make the purchase. Learning that the defendant had money and might be induced to purchase the lands, they went to him and urged the purchase upon him, and either as an inducement to the defendant to purchase, or because they desired in fact to obtain an interest in the land, they stated to the defendant that if he would purchase and pay for the land, they would each take of him a quarter interest and pay him in the future one half of the purchase price, with ten per cent. interest on the same. The evidence shows that the defendant afterwards, in the summer of 1874, purchased the lands for the sum of $36,000. The plaintiff states the contract between the defendant and plaintiff and McArthur as

follows: 'He (defendant) agreed to buy these lands and pay for them, and carry a half interest for McArthur and myself,— one quarter for myself and one quarter for Mc-Arthur.   We were to pay for them by profits derived from the lumber.   He said he was an old lumberman, and I told him I was, and I would put in my time to conduct the business — the lumber business — on these lands.   And Mc-Arthur had some teams, cattle, horses, and sleds, and he was to put in such proportion of his stuff as was required, and to log them off, and we were to cut them, or sell them in the market, as the case might be.   And after he was to get his money and interest back, we were to divide the profits derived from the logging operations of the timber. The profits were to be divided after paying the purchase money of the land, which was $36,000.'   The plaintiff then testified that about the 5th of June, 1874, he deposited with the defendant $1,000 on the contract, and he (defendant) agreed that if the contract talked of was not carried out he would pay the money back to him.

" The further evidence in the case shows that what the plaintiff calls a deposit with the defendant of the $1,000, occurred in this way:  Plaintiff had an agreement with Hitchcock that if he would find a purchaser for the land Hitchcock would pay him a commission, the amount not being fixed at first.   This understanding between the plaintiff and Hitchcock was disclosed to the defendant before he made his purchase, and it would seem he made use of this knowledge, and of the plaintiff's influence with Hitchcock, to bring about a final agreement between the parties.   Just before the purchase was completed and the purchase money paid by defendant, it was finally agreed between Hitchcock and plaintiff that he was to have a commission on the sale of $1,000.   This was not only known to the defendant, but he aided the plaintiff in securing the money.   Upon the final consummation of the purchase by defendant, and, as the plaintiff testifies, at the suggestion of the defendant, it

was agreed that his commission of $1,000 should not be paid over to Hitchcock, but should be left in the hands of the defendant by Hitchcock for plaintiff's benefit; and that in pursuance of such agreement the defendant paid Hitchcock the sum of $35,000 only, the contract price as agreed upon being $36,000.

"This statement of the plaintiff as to his being entitled to a commission from Hitchcock of $1,000 is not denied by the defendant, and he admits that there was a deduction of $1,000 from the purchase price agreed upon on account of the plaintiff's right to the commissions, but he insists that the commissions of the plaintiff were to be for the benefit of all three of the parties supposed to be interested in the land, viz., himself, plaintiff, and McArthur, and that as between them the purchase price was to be $35,000 instead of $36,000. This statement of the defendant is denied by both McArthur and the plaintiff, both claiming that the $1,000 belonged to plaintiff individually, and was not for the benefit of all equally in abatement of the price of the land. There is a good deal of contradictory evidence found in the record, but there certainly is evidence enough to sustain a verdict finding that the $1,000 left in the hands of the defendant by Hitchcock was left there for the use and benefit of the plaintiff, and that it was so left with the consent of the plaintiff, and with an agreement on the part of the defendant to account for that sum to the plaintiff, and that such sum was either received by the defendant of the plaintiff to apply as part payment upon his parol purchase of the undivided fourth interest in said lands, or that it was so received by the defendant to be paid to the plaintiff on demand. There is also sufficient evidence to sustain a finding that the defendant refused, upon the request of the plaintiff, to carry out the parol contract in regard to the sale and purchase of the land. There is also evidence showing a demand for the $1,000 before suit brought."

There was a verdict for the plaintiff; a motion for a new

trial was denied; and from the judgment entered on the verdict the defendant appealed.

*E. C. Lewis,* attorney, and *E. P. Smith,* of counsel, for the appellant.

*Henry L. Buxton,* for the respondent.

TAYLOR, J.   The learned counsel for the appellant, in a very elaborate argument, attempts to show that the plaintiff cannot maintain his action against the defendant, for the reason that, as he alleges, the evidence proves that the plaintiff committed a fraud upon the owners of the real estate purchased by the defendant, in this, that while he was pretending to act on behalf of the owners of the real estate in making a sale of their lands, he was in fact acting on behalf of himself and the defendant as purchasers. If it be admitted that the plaintiff was guilty of fraud towards the owners of the lands sold, who have paid him a commission for his pretended assistance in making such sale, we are unable to see how such fraud can justify the defendant in withholding the $1,000 from the plaintiff. It seems clear to us that the defendant, under the proofs and the finding of the jury upon such proofs, stands in the same relation to the plaintiff as though the $1,000 had been first paid to him by the owners of the land in satisfaction of his commissions, and thereupon he had paid the money to the defendant in part payment for his interest in the land under the parol contract. It needs no argument to show that, had the money passed directly from the owners of the land to the plaintiff, in discharge of his claim for commissions, and had he then paid the same money to the defendant on a contract between himself and the defendant, the defendant could not refuse to account with the plaintiff for it, either as a payment on the contract or upon an implied promise to return it to the plaintiff if the contract was not carried out, on the ground that the plaintiff had fraudulently obtained it from the

owners of the land. The defendant does not stand in the place of the men who paid the money to the plaintiff, and he cannot invoke any rights they might have to the money to defeat the plaintiff from recovering of him upon his contract, so long as such owners make no claim upon the defendant for such money. We know of no law which allows a vendee of personal property to defeat the action of his vendor for the purchase price, by showing that such vendor possessed himself of such property by a fraud upon his prior vendor, unless such first vendor has asserted his right to the goods in the possession of the second vendee. The right of the first vendor to avoid the sale for fraud is a personal right, and can only be set up by him or those in privity with him. It may be that the original vendors of this land might have compelled the defendant to pay to them the $1,000, which he had been permitted to retain for the use of the plaintiff, if they had commenced an action for that purpose before he had paid the same to the plaintiff. Nothing of that kind has been done by them in this case, and the defendant is in no position to do it for them. The plaintiff's right to recover the money, if he have such right, does not depend on any contract between himself and the original land-owners, but upon a contract between himself and the defendant, and such contract is clearly untainted by any alleged fraud of the plaintiff against such owners.

Treating the $1,000 as paid by the plaintiff to the defendant upon the parol contract for the purchase of a quarter interest in the land, such payment was made upon a void contract, and plaintiff was, under the decisions of this court, entitled to recover the same of the defendant, upon demand of payment of the money so paid, though the defendant did not refuse to go on with the contract on his part. *Brandeis v. Neustadtl*, 13 Wis., 142; *Thomas v. Sowards*, 25 Wis., 631; *Hooker v. Knab*, 26 Wis., 511; *N. W. U. P. Co. v. Shaw*, 37 Wis., 655; *Clark v. Davidson*, 53 Wis., 317.

The learned counsel for the appellant admits this to be the rule established by this court; and upon this part of the case he takes exception only to the sufficiency of the demand made by the plaintiff for the repayment of the money before suit brought; and also excepts to the charge of the court upon the question of demand. If the evidence of the plaintiff upon the subject of demand was believed by the jury, there can be no doubt as to its sufficiency. Upon this point the court charged the jury as follows:

" Where a contract is void by the statute of frauds, and money is paid upon it which the party is entitled to recover back, he cannot recover it back without making a demand, because otherwise the vendor might not know but the other party was going to take possession and fulfill the contract; but, the contract being void, when the party paying the money goes and demands it, that is notice that he will not perform it, and then if the vendor refuses to pay, a cause of action at once arises to enable him to recover it back, with interest from the time at seven per cent. If he does not refuse, he is to have a reasonable time to get the money and pay it. What is a reasonable time is a question of fact for you.

" I ought to say this, further, that in making the demand for the money it is not necessary that he should put it on the ground that the contract is void under the statute of frauds, but there must be such a reference to the money when the demand is made that the defendant should understand that it is the money paid on the contract which is void by the statute."

These instructions, we think, are sufficiently favorable to the defendant, and state the law correctly.

It is also insisted by the learned counsel for the appellant that the plaintiff ought not to be allowed to recover in this action, because he took from the defendant a written receipt, by the terms of which the defendant was to pay to the

plaintiff $1,000 when he should show a road from the pine lands purchased by defendant of Guild, of Wakefield, N. Y. to the Wolf river, which road should be on an average from the whole tract of not more than seven miles from the river, and if he did not show a practical road, as described above, then the said $1,000 should belong to defendant. Upon the trial both parties agreed that this receipt was made for the purpose of being used in the negotiations for the purchase of the lands by the defendant, and for the purpose of inducing the owners to allow the plaintiff the $1,000 for his commissions, and that neither party considered it as an agreement by which either party was to be bound. We do not think this receipt so explained by the parties is any defense to the plaintiff's action.

The case depends mainly upon questions of fact, which the jury have found against the defendant upon conflicting evidence, and their verdict is necessarily final. The court submitted the case to the jury with instructions to which there are no valid objections. The case seems to have been fairly tried, and we find no error in the record which would justify a reversal.

*By the Court.*— The judgment of the circuit court is affirmed.