532    APPELLATE COURTS OF ILLINOIS.

The Auto. M. Co. v. The Amer. S. M. P. Corp., 232 Ill. App. 532.

The Automotive Material Company et al., Complainants, v. The American Standard Metal Products Corporation et al., Defendants.

William R. Johnston Manufacturing Company, Cross-Complainant, Appellant, v. The Automotive Material Company et al., Cross-Defendants, Appellees.

## Gen. No. 27,946.

1. FOREIGN CORPORATIONS—*evidence as to doing business in state without license.* On the question whether a foreign corporation was doing business within the state without a license, it is a circumstance that at the outset of dealings it had knowledge that such a certificate was necessary and that its president made inquiries as to the cost of procuring it, such circumstance tending to show an intention to engage in more than a single isolated transaction.

2. FOREIGN CORPORATIONS—*admission in answer that business was done without license.* An admission contained in the answer to a bill and cross-bill that the foreign corporation defendant did not have a certificate of authority to do business in the state when the contract in question was entered into, followed by a statement that defendants believed the contract would be validated if a license were thereafter procured, give rise to a fair implication that defendants knew the corporation was doing business in the state without authority.

3. FOREIGN CORPORATIONS—*facts amounting to doing business within state.* In a suit involving the validity of a contract made by a foreign corporation within the state, evidence held sufficient to bring the corporation within the rule defining what constitutes doing business in the state by such a corporation, so as to require a certificate of authority, not merely the doing of such things as amounted to acquiring the instrumentalities for doing future business or isolated transactions not requiring a certificate.

4. FOREIGN CORPORATIONS—*voidableness or nullity of contract without license.* A contract made by a foreign corporation which is doing business in the state without a certificate of authority is void, not merely voidable.

5. FOREIGN CORPORATIONS—*effect on rights of noncompliance with regulations.* The rights of the parties to a corporate contract which is void because the corporation was doing business in the state without having obtained the certificate of authority required by

statute are not to be determined solely from considerations of individual contractual rights but are dependent principally upon the nature and purpose of the statute regulating foreign corporations by virtue of which public interests and public policy are involved.

6. FOREIGN CORPORATIONS—*estoppel to deny validity of contract for want of license.* Although a contract made by a foreign corporation not licensed to do business in the state is void as to it and it is estopped from denying the validity of the contract, the estoppel is not mutual and the other party is not estopped from denying the validity of the contract and from asserting its rights thereunder.

7. FOREIGN CORPORATIONS—*right of opposite party to refund and reimbursement of money paid on void contract made without license.* A cross-complainant which had entered into a contract with a foreign corporation to act as its general sales agency for one of its products and had paid $5000 on the contracts and given notes for the balance of the agreed consideration and had spent over $5000 on preliminary work under the contract which was void because the corporation was not licensed to do business in the state, was entitled to be placed in *statu quo* as nearly as possible by having the money payment and the notes returned and being compensated for the money expended under the contract.

8. FOREIGN CORPORATIONS—*default on void contract no defense to relief based on its nullity.* A foreign corporation which enters into a contract which is void because the corporation is not licensed to do business in the state is, in a suit by the other party for equitable relief, based on invalidity and not on the contract, in no position to complain of any acts of such other party which would amount to a default on the contract.

9. FOREIGN CORPORATIONS—*proper relief under statute avoiding contracts of unlicensed foreign corporations.* Although the statute which renders void a contract executed by a foreign corporation which is not licensed to do business in the state does not provide for equitable relief by placing the other party in *statu quo*, and was not primarily enacted for the benefit of individuals but is the expression of a state policy directed toward foreign corporations, such equitable relief results as a logical incident from the statute.

10. EQUITY—*inducing another to exercise right is not obnoxious to equity.* A cross-complainant in a suit for relief from a contract which was void because the cross-defendant was a foreign corporation not authorized to do business in the state was not barred from the relief sought by the fact that it induced the original complainant to file the bill of complaint which it rightfully could do.

11. FOREIGN CORPORATIONS—*relief to opposite party under con-*

534    APPELLATE COURTS OF ILLINOIS.

The Auto. M. Co. v. The Amer. S. M. P. Corp., 232 Ill. App. 532.

tract of unlicensed foreign corporation which it is willing to perform. Equitable relief to the party which paid money and delivered notes to an unlicensed foreign corporation under a contract void for want of license cannot be denied because the corporation is willing to carry out the contract, if permitted; since that would allow the thing to be done which the statute forbids.

12. FOREIGN CORPORATIONS—effect on void contract of subsequent license to do business in state. A contract which was void when made because one of the parties thereto is a foreign corporation not licensed to do business in the state is not validated by such corporation's subsequent compliance with the law.

13. FOREIGN CORPORATIONS—right to recover from corporation expenditures made under contract before license. In a cross-suit to recover expenses incurred under a contract which was void because the cross-defendant was a foreign corporation not licensed to do business in the state, while the suit is not based upon a breach of contract and the expenditures could not be recovered on the theory of such a breach, they are recoverable on the theory that they were incurred by reason of the fact that the cross-defendant was doing business in the state without a certificate of authority and that the contract consequently was void.

14. FOREIGN CORPORATIONS—personal liability of president who negotiated void contract on behalf of unlicensed corporation. The president of a foreign corporation who personally conducted negotiations resulting in the making of a contract is personally liable to the other contracting party in a cross-suit to recover expenditures incurred under the contract which was void because the corporation was not licensed to do business in the state.

Appeal by cross-complainants from the Circuit Court of Cook county; the Hon. GEORGE FRED RUSH, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1922. Reversed in part, affirmed in part and remanded with directions. Opinion filed April 14, 1924.

CHARLES S. GRAVES, for appellant.

WETTEN, PEGLER & DALE, for appellees; PAUL N. DALE, of counsel.

MR. JUSTICE JOHNSTON delivered the opinion of the court.

This is an appeal by the William R. Johnston Manufacturing Company, a corporation, cross-complainant,

from a decree rendered in a suit brought by The Automotive Material Company, a corporation, Winthrop Burdick and Elmer R. Talbot, against the defendants, The American Standard Metal Products Corporation, E. B. Cadwell and William R. Johnston Manufacturing Company, a corporation. The original bill of the Automotive Material Company, Winthrop Burdick and Elmer R. Talbot alleged that the Automotive Material Company was an Illinois corporation and that Burdick was president and Talbot was treasurer; that the Automotive Material Company was the owner of a patent device known as the Moore Sight Feed Oiling System, and of patents and applications for patents concerning a sight feed lubricator and oiling system for automobiles; that the American Standard Metal Products Corporation was a Delaware corporation organized for profit, having an office and principal place of business in Chicago; that as such foreign corporation it had at no time, and did not have at the time the bill was filed, a certificate of authority to do business in the State of Illinois, and that no certificate of authority from the secretary of state was ever issued to it; that all contracts made or attempted to be made by it in the State of Illinois were illegal and void; that the complainants were ignorant of and had no notice of the want of the certificate of authority from the secretary of state of Illinois; that not knowing and having no notice that the American Standard Metal Products Corporation had no right or authority to do business in the State of Illinois, the complainants assumed to enter into a contract with that corporation; that E. B. Cadwell, acting for and as president of the American Standard Metal Products Corporation, knew that the corporation did not have a certificate of authority to do business in the State of Illinois, yet he induced the complainants to enter into a contract with that corporation; that Burdick and Talbot were the owners of substantially all of the capital stock of the Automotive Material Com-

pany, and were in control of that company; that they entered into a written contract with the American Metal Products Corporation in the City of Chicago, State of Illinois, in which they agreed to cancel a certain license agreement then existing between the Automotive Material Company and the Universal Manufacturing Company, which latter company up to that time had the exclusive right to manufacture and sell the Moore Sight Feed Oiling System; that if Burdick and Talbot should secure the cancellation of the license contract with the Universal Manufacturing Company, the complainants and Burdick and Talbot would forthwith cause the Automotive Material Company to enter into a license agreement with the American Standard Metal Products Corporation upon terms and conditions in substance as follows:

That the Automotive Material Company would grant to the American Standard Metal Products Corporation an exclusive license to manufacture and sell the patented device during the life of the patents, or until such time as the royalties specified to be paid should amount to the sum of $50,000, and would assign its patents to the Metal Products Corporation; that the American Standard Metal Products Corporation should manufacture or cause to be manufactured, and promote the sale of the oiling system, should supply the capital necessary to demonstrate to its own satisfaction whether or not the manufacture and sale of the oiling system could be made profitable, and should have the option to cancel the agreement if in its judgment the venture was not profitable; that the American Standard Metal Products Corporation should pay to the Automotive Material Company a royalty for each device sold; that the American Standard Metal Products Corporation would pay to the Automotive Material Company as advance royalties the sum of $2,000 upon the execution of the license agreement, and certain additional amounts on account of royalties; that the American Standard

Metal Products Corporation would forthwith take over from the Automotive Material Company all of the tools, dies, etc.; that the American Standard Metal Products Corporation would employ Burdick and Talbot at a salary.

The complainants further alleged that they entered into another contract in the City of Chicago, State of Illinois, with the American Standard Metal Products Corporation, in which it was agreed that an assignment of the patents should be made to the American Standard Metal Products Corporation; that the American Standard Metal Products Corporation commenced forthwith to purchase materials and supplies and to manufacture the oilers in the City of Chicago.

The complainants further alleged that thereafter the American Metal Products Corporation assumed to enter into a written contract with the William R. Johnston Manufacturing Company, an Illinois corporation, wherein it was agreed that the William R. Johnston Manufacturing Company should have the exclusive right and license to sell the oilers throughout the United States and foreign countries; that the William R. Johnston Company agreed to begin a sales campaign and to purchase a minimum quantity of not less than 200,000 of the oilers within a period ending April 1, 1922, and to market the oilers as "Johnston Sight Feed Oilers"; that the William R. Johnston Manufacturing Company paid the American Standard Metal Products Corporation the sum of $5,000 in cash, and executed and delivered its four promissory notes for the sum of $5,000 each; that on or about April 25, 1921, Cadwell, knowing the contracts were void, represented to the William R. Johnston Manufacturing Company that he had become and was the owner of the patents, and was having them transferred to him; that the William R. Johnston Manufacturing Company thereupon ordered several thousand of the oilers from Cadwell; that Cadwell assumed sole charge of the business of the American Standard Metal Prod-

538    APPELLATE COURTS OF ILLINOIS.

The Auto. M. Co. v. The Amer. S. M. P. Corp., 232 Ill. App. 532.

ucts Corporation and manufactured oilers in the City of Chicago, contrary to the laws of the State of Illinois; that Burdick and Talbot had been in the employ of the American Standard Metal Products Corporation.

The prayer of the bill is that an accounting may be taken; that upon payment by the complainants of any sum due to the defendants, the patents and other property may be delivered to the complainants; that the defendants may be compelled to reassign and reconvey the patent rights to the complainants; that a temporary injunction may be granted restraining the American Standard Metal Products Corporation, Cadwell and the William R. Johnston Manufacturing Company from assigning, transferring or incumbering the patents; that the pretended assignments made by the complainants to the defendants of the patent rights be declared null and void.

A temporary injunction was issued in accordance with the prayer of the bill. The American Standard Metal Products Corporation and Cadwell, jointly and severally, answered the bill. The answer admits that the American Standard Metal Products Corporation was a corporation organized under the laws of Delaware; admits that it had an office in the City of Chicago and purchased materials and supplies in that city for use in connection with the manufacture of the oilers; admits that Burdick and Talbot were in the employ of the American Standard Metal Products Corporation; admits that the contracts were made and the patents signed as alleged in the bill; admits that the $5,000 was paid by the William R. Johnston Manufacturing Company and the notes were executed by that company; admits that Cadwell entered into negotiations with the William R. Johnston Manufacturing Company in regard to a new contract; admits that Cadwell was president of the American Standard Metal Products Corporation; admits that the American Standard Metal Products Corporation had not com-

plied with the laws of the State of Illinois in regard to procuring a license, but that that company did not understand that the contracts would be rendered invalid thereby, but believed that the contracts would be validated if a license was thereafter procured. The answer denies that it had its principal place of business in the City of Chicago; denies that the complainants had no notice of the fact that the American Standard Metal Products Corporation was without license to do business in the State of Illinois; denies that Cadwell, the cross-defendant, knew that the American Standard Metal Products Corporation had no right to do business in Illinois.

The William R. Johnston Manufacturing Company answered the original bill and also filed a cross-bill. The answer admits that the American Standard Metal Products Corporation was a Delaware corporation with its place of business in the City of Chicago, and was doing business in the State of Illinois without a license. The answer alleges that the William R. Johnston Manufacturing Company had no knowledge that the American Standard Metal Products Corporation was doing business in the State of Illinois without a license.

In the cross-bill, the William R. Johnston Manufacturing Company makes the same allegations substantially as were made in the original bill in regard to the contract, patents and the doing of business by the American Standard Metal Products Corporation in the State of Illinois without a license. The cross-bill expressly alleges that in consideration of the contract for the William R. Johnston Manufacturing Company to act as exclusive sales agent throughout the United States and foreign countries, the cross-complainant, the William R. Johnston Manufacturing Company, paid to the American Standard Metal Products Corporation the sum of $5,000 in cash and gave four promissory notes for $5,000 each; that the cross-complainant, the William R. Johnston Manufacturing

Company, did not know that the American Standard Metal Products Corporation was not licensed to do business in the State of Illinois; that the contract entered into between the cross-complainant, William R. Johnston Manufacturing Company, and the American Standard Metal Products Corporation was void; that in addition to the $5,000 cash and the notes heretofore mentioned, the cross-complainant, the William R. Johnston Manufacturing Company, expended a sum of money in carrying out the contract amounting to $5,000, for which it is entitled to be reimbursed; that Cadwell was the president and one of the directors of the American Standard Metal Products Corporation, and that he became personally liable to the cross-complainant, the William R. Johnston Manufacturing Company. The prayer of the cross-bill asked that an accounting be had; that the $5,000 cash payment, and whatever sums may be found due on the accounting, may be paid to the cross-complainant, the William R. Johnston Manufacturing Company, and that the promissory notes may be delivered to the cross-complainant.

The joint and several answers of the American Standard Metal Products Corporation and Cadwell to the cross-bill admits that the American Standard Metal Products Corporation had no certificate to do business in the State of Illinois; but denies that its principal place of business was in the City of Chicago; and neither admits nor denies that the contracts were illegal and void; admits that the American Standard Metal Products Corporation knew that it did not have a certificate of authority to do business in the State of Illinois, but that the belief and understanding of the corporation was that it would be sufficient if the license was procured later; admits the making of the contract between the American Standard Metal Products Corporation with the cross-complainant, the William R. Johnston Manufacturing Company; admits that the American Standard Metal

Products Corporation represented that it was the owner of the patents and that it had full authority to grant the right to sell the patented device; admits the payment of $5,000 in cash to it by the cross-complainant, the William R. Johnston Manufacturing Company, and the delivery of the promissory notes of that company; denies that the money and the notes were without consideration; denies that Cadwell represented that he was the owner of the patents; admits that the cross-complainant, the William R. Johnston Manufacturing Company, never received any of the oilers provided to be furnished by the terms of the contract; admits that Cadwell is the president of the American Standard Metal Products Corporation, but denies that Cadwell is personally liable; admits that Cadwell negotiated with the cross-complainant, the William R. Johnston Manufacturing Company, in regard to a new contract, but that no new contract was made; denies that the cross-complainant, the William R. Johnston Manufacturing Company, expended $5,000 in carrying out the provisions of the contract; admits that owing to the failure of the cross-complainant, the William R. Johnston Manufacturing Company, to send in orders for oilers, the American Standard Metal Products Corporation notified the cross-complainant that it immediately would take steps to have the oilers offered to the public by whatever means it might deem advisable; alleges that the cross-complainant never intended to carry out its contract; that the cross-complainant entered into a contract with the Automotive Material Company with reference to the manufacture and sale of the oilers and that by reason of that fact is not in court with clean hands, but has so conducted itself, both before and since the beginning of the suit, as to deprive it of the right to any relief in a court of equity.

Before the hearing of the cause, Cadwell purchased a controlling interest in the stock of the Automotive Material Company. On the hearing, the original bill

was dismissed and the preliminary injunction was dissolved. The issues presented by the original bill were never considered by the court.

On the issues made by the cross-bill and the answer, oral testimony was taken before the Chancellor in open court. The Chancellor ordered that the contract between the William R. Johnston Manufacturing Company and the American Standard Metal Products Corporation be canceled and held for naught; that the American Standard Metal Products Corporation and Cadwell return to the William R. Johnston Manufacturing Company the promissory notes of the latter company; that the costs be taxed against the defendants, the American Standard Metal Products Corporation and Cadwell.

The William R. Johnston Manufacturing Company appealed from the decree. The only ground on which a reversal of the decree is asked is that the Chancellor erred in not ordering the return to the William R. Johnston Manufacturing Company with interest of the $5,000 cash payment to the American Standard Metal Products Corporation, and in not ordering the American Standard Metal Products Corporation to pay to the William R. Johnston Manufacturing Company $5,603.45, the money expended by the William R. Johnston Manufacturing Company in connection with the contract.

The cross-defendants, the American Standard Metal Products Corporation and Cadwell, have assigned cross-errors. The principal cross-errors assigned are as follows: That the Chancellor erred in finding that the American Standard Metal Products Corporation was doing business in the State of Illinois without right or legal authority; that the Chancellor erred in ordering that the contract be canceled and held for naught; that the Chancellor erred in ordering the cross-defendants, the American Standard Metal Products Corporation and Cadwell, to return to the cross-

complainant, the William R. Johnston Manufacturing Company, the promissory notes.

The principal question, and in our opinion the controlling one, is whether the American Standard Metal Products Corporation was doing business in the State of Illinois at the time that it entered into the contract with the William R. Johnston Manufacturing Company. The only ground on which the cross-complainant seeks to maintain its suit is that the contract was void because the cross-defendant, the American Standard Metal Products Corporation, was doing business in the State of Illinois without a certificate of authority from the secretary of state. It is admitted by the cross-defendant, the American Standard Metal Products Corporation that it did not have a certificate of authority. If, therefore, it was doing business in the State of Illinois, the contract was void, and, in the view we take of the case, it would follow as a logical consequence that the cross-complainant would be entitled to be restored to its *status quo* before the contract was made. If the cross-defendant, the American Standard Metal Products Corporation, was not doing business in the State of Illinois, then the contract would not be void, and the cross-complainant would not be entitled to any relief on the theory on which the cross-bill is based.

The cross-defendants, Cadwell and the American Standard Metal Products Corporation, were well aware of the fact that a certificate of authority was needed to enable the American Standard Metal Products Corporation to do business in the State of Illinois, and the question of the cost of the certificate had been considered. Although ignorance of the statutory requirements would not have excused the corporation for failure to obtain the certificate of authority (*Chattanooga National Building & Loan Ass'n v. Denson*, 189 U. S. 408, 416), yet the fact that the corporation knew that the certificate was necessary and that Cadwell, the president of the cor-

544    APPELLATE COURTS OF ILLINOIS.

The Auto. M. Co. v. The Amer. S. M. P. Corp., 232 Ill. App. 532.

poration, had considered the cost of the certificate, are circumstances indicating that the corporation contemplated doing business in the State of Illinois, not in the sense of a single isolated transaction, nor for the purpose of acquiring the instrumentalities for doing a future business, but to the extent and within the meaning of the statutory provisions which required a certificate of authority. Furthermore, in the answer to the original bill and to the cross-bill, the cross-defendants admit that the American Standard Metal Products Corporation did not have a certificate of authority to do business in the State of Illinois when the contract was entered into, but the cross-defendants state that they believed that the contracts would be validated, and that it would be sufficient if the corporation procured a license thereafter. The fair implication from this admission is that the cross-defendants knew that the American Standard Products Corporation was doing business in the state without a certificate of authority.

Cadwell, the president of the corporation, testified that he communicated through his New York attorneys with the Secretary of State of Illinois to ascertain what it would cost to get a certificate of authority to do business in the State of Illinois, and that he found that it would cost about $7,000; that he called a meeting of the stockholders and authorized a reduction of the capital stock "to enable us to register within a reasonable expense," but that the details were not completed. Notwithstanding the fact that the American Standard Metal Products Corporation neglected to procure the necessary certificate, it did business in the State of Illinois, in our opinion, in violation of the statute. The Chancellor, after hearing the testimony of the witnesses in open court, found that the American Standard Metal Products Corporation "was doing business within the State of Illinois without right or legal authority, but was conducting business only as to the one product or oiler

designated and described in said letters patent, with the intent of later obtaining a license to do business in this State." The American Standard Metal Products Corporation was also engaged in the business of lending money.

The evidence shows that the American Standard Metal Products Corporation had an office in the City of Chicago at 451 East Ohio street; that the corporation had stationery stamped with that address; that the corporation had ceased to carry on its business in the state in which it was incorporated; that it was lending money in the State of Illinois; that Cadwell, the president of the American Standard Metal Products Corporation, came to Chicago and personally conducted negotiations with William R. Johnston of the William R. Johnston Manufacturing Company, relative to the contract with that company to act as sales agent for the American Standard Metal Products Corporation; that the contract was finally executed in Chicago; that the contract contains the following recital:

"Whereas, said corporation is now engaged in the manufacturing of said oiler or is having same manufactured for it, and is desirous of procuring someone to market said oiler;" that the American Standard Metal Products Corporation entered into a contract in the City of Chicago with the Automotive Material Company, accepted the assignments of the patents and the application for patents of that company, and purchased the tools, dies and other property of that company; that there was a directors' meeting of the American Standard Metal Products Corporation in the City of Chicago, at 451 East Ohio street, held for the purpose of authorizing Root, the secretary and treasurer, to sign the contract with the William R. Johnston Manufacturing Company; that the check of the William R. Johnston Manufacturing Company for $5,000 was accepted by the American Standard Metal Products Corporation, and deposited in a bank

546    APPELLATE COURTS OF ILLINOIS.

The Auto. M. Co. v. The Amer. S. M. P. Corp., 232 Ill. App. 532.

in Chicago; that the corporation assembled oilers at 451 East Ohio street, and that the oilers were made to supply samples requested by Johnston of the William R. Johnston Manufacturing Company; that the American Standard Metal Products Corporation had employees in Chicago in connection with its business at 451 East Ohio street; that one of the employees named Felch looked after the oilers and operated an oiler at the Chicago Automobile show; that an employee named Talbot installed some oilers; that the Standard Oil Company bought a number of oilers; that an employee named Burdick was in charge of the oiler department, and that he demonstrated how the oilers worked.

In our opinion, the facts which we have stated are sufficient to bring the American Standard Metal Products Corporation within the rule defining what constitutes doing business in a state by a foreign corporation. The general rule as stated in Corpus Juris (14A, sec. 3977, p. 1270) is that "when a foreign corporation transacts some substantial part of its ordinary business in a State, it is doing, transacting, carrying on, or engaging in business therein——within the meaning of the statutes under consideration." It is contended by counsel for the cross-defendants that the American Standard Metal Products Corporation was only doing acts which were preliminary to the transaction of business and which "amounted merely to acquiring the instrumentalities for doing future business," and that such acts do not come within the meaning of the statute. (14A Corpus Juris, sec. 3986, p. 1279.) We do not think that the evidence reasonably and fairly construed will justify that interpretation. Counsel for the cross-defendants further cite authorities to the effect that isolated transactions do not constitute doing business within the meaning of the statute. *Watson Fireproof Window Company v. Rysdon*, 189 Ill. App. 134; *Alpena Portland Cement Company v. The Jenkins & Reynolds Company*, 244

Ill. 354. In our view, the acts were not isolated, but were connected and continuous.

Since we are of the opinion that the American Standard Metal Products Corporation was doing business in the State of Illinois without a certificate of authority, in violation of the statute, it follows that the contract between the American Standard Metal Products Corporation and The William R. Johnston Manufacturing Company, which provided that the William R. Johnston Manufacturing Company was to act as the exclusive sales agent in the United States and foreign countries for the American Standard Metal Products Corporation, is void. *Cincinnati Mutual Health Assurance Company v. Rosenthal,* 55 Ill. 85; *United Lead Company v. J. W. Reedy Elevator Mfg. Company,* 222 Ill. 199; *Finch & Company v. Zenith Furnace Company,* 245 Ill. 586; *Ryerson & Son v. Shaw,* 277 Ill. 524; *Indiana Harbor Belt Railroad Company v. Green,* 289 Ill. 81.

Our conclusion that the contract is void is in accord with the finding of the Chancellor.

The Chancellor found, and we think correctly, that the cross-complainant, the William R. Johnston Manufacturing Company, had no knowledge before the filing of the original bill of complaint that the cross-defendant, the Standard Metal Products Corporation, did not have a certificate of authority from the Secretary of State of Illinois to do business in the state.

The contract being void, what relief, if any, is the cross-complainant, the William R. Johnston Manufacturing Company, entitled to? According to counsel for the cross-complainant, the Chancellor should have ordered the return of the $5,000 cash payment with interest to the cross-complainant; should have entered a decree against the cross-defendants in the sum of $5,603.45, the amount claimed to have been expended by the cross-complainant under the contract; and should have ordered the return of the four promissory notes to the cross-complainant. On the

548 Appellate Courts of Illinois.

The Auto. M. Co. v. The Amer. S. M. P. Corp., 232 Ill. App. 532.

contention of counsel for the cross-defendants, the cross-complainant is not entitled to any relief.

The Chancellor ordered the return of the promissory notes, but found that the cross-complainant was not entitled to a decree for the $5,000 cash payment or for the $5,603.45 claimed as expenditures. In our view, the cross-complainant was either entitled to complete relief or to none. Logically there is no middle ground. The same equitable reasons which would justify the return of the promissory notes, would compel a decree for the $5,000 cash payment and the $5,603.45 claimed as expenditures.

The rights of the parties in the case at bar should not be determined solely from considerations of individual contractual rights. Their rights are dependent principally upon the nature and purpose of the statutory provisions regulating foreign corporations. By reason of the statute, public interests and public policy are involved. Section 94 of chapter 32 [Cahill's Ill. St. ch. 32, ¶ 94], relating to corporations provides as follows: "No foreign corporation doing business in this State without a license shall be permitted to maintain any suit at law or in equity in any of the courts of this State upon any demand whether arising out of contract or tort; and all such corporations shall be liable by reason thereof to a penalty therefor of not less than two hundred and fifty dollars nor more than one thousand dollars, to be recovered in any court of competent jurisdiction, in a civil action to be begun and prosecuted by the Attorney General." (Cahill's Ill. Rev. St. (1921), ch. 32, ¶ 94, p. 910.) The contracts contemplated by the statute are not merely voidable as to foreign corporations or nonenforceable in the state by foreign corporations, but are null and void as to such corporations. This distinction is a material one. It has been expressly recognized in the case of *Hunter W. Finch & Company v. The Zenith Furnace Company*, 245 Ill. 586. In that case the court said (p. 593); "A contract made by

a foreign corporation doing business in Minnesota is not declared to be void, but the corporation is subject to a fine and is not permitted to maintain any suit or action in any of the courts of the State. The rule in this State is, that if the contract is unlawful under the statute it is void, notwithstanding the statute imposes a penalty upon a foreign corporation doing business in violation of its provisions.''

In discussing the nature and purpose of a statute similar to the one in the case at bar, in the case of *Osborne & Co. v. Shilling,* 74 Kan. 675, the court said (p. 677) : ''the statute was enacted for the benefit of the general public, and its purpose *cannot be bargained away by individuals.* The regulation of foreign corporations is for the purpose of subjecting them to inspection, so that their condition, standing, and solvency may be known—the same sort of inspection to which domestic corporations are subjected. Another purpose, likewise intended for the protection of the public, was to subject foreign corporations to the jurisdiction of the courts of the state; and an incidental purpose was to provide revenue. *Involved in the statute are these public considerations, which are of greater consequence than mere individual rights.* It was not for defendants' sake, therefore, that the provision was made; but it is a rule of state policy of which the defendants may incidentally take advantage.'' This language was quoted with approval in the case of *Parke, Davis & Co. v. Mullett,* 245 Mo. 168, 175.

In the case of *Fruin-Colnon Contracting Co. v. Chatterson,* 146 Ky. 504, the Fruin-Colnon Contracting Company, a foreign corporation, constructed a street improvement, a portion of which abutted on the property of the defendant. After having completed the contract, the Fruin-Colnon Contracting Company brought an action against the defendant upon an apportionment warrant to enforce its lien upon the defendant's property to satisfy the cost of the improve-

ment. The defendant set up the defense that the Fruin-Colnon Contracting Company had failed to comply with the statutory requirements necessary to entitle it to carry on business in the state, and that there could be no recovery on the contract. In holding the contract void and deciding in favor of the defendant the court said (p. 511): "The statute relied on in the case before us * * * is a police regulation enacted for the benefit and protection of the citizens of the state and to enable persons desiring to bring actions against corporations to know upon whom service or process may be had." It was contended by the plaintiff in that case that since the work had been completed and the defendant had received the benefit of the work, the defendant could not set up as a defense the want of power on the part of the corporation to make the contract. On this contention the court said (pp. 512, 513): "It is also argued that it would be a hardship on this corporation to lose the value of its work, but this furnishes no reason why it should obtain relief, as there is scarcely a *penal statute* the enforcement of which does not impose severe burdens; and, if the severity of the punishment should be treated as a reason for disregarding the statute, many beneficial laws would go unenforced."

In the case of *Peck-Williamson Heating & Ventilating Co. v. McKnight & Merz,* 140 Tenn. 563, a bill was filed by the Heating & Ventilating Company to enforce a mechanic's lien. The court held (p. 577) that the Heating & Ventilating Company was doing business in the state without having complied with the law regulating foreign corporations, and that, therefore, there could be no recovery under the contract. The court said (pp. 580, 581): "This result is not obviated by the fact that the defendant himself signed the contract, nor by the fact that he made a payment thereon, or pleaded a set-off thereto, or received benefits thereunder. Being held void on the *ground of public policy,* and not for the benefit of the defendant,

it is incapable of ratification or estoppel by his conduct.''

Although the contract in the case at bar is void as to the cross-defendant, the American Standard Metal Products Corporation and that corporation is estopped from denying the validity of the contract, the estoppel is not mutual and the William R. Johnston Manufacturing Company, ''the other party to the contract, is not estopped from denying the validity of the contract and from asserting its rights under the contract.'' *Ryerson & Son v. Shaw, supra.*

The case of *Ryerson & Son v. Shaw, supra,* does not hold that the ''other party to the contract'' can only seek relief in a court of law. The court merely says that the other party to the contract is not estopped from ''asserting his rights.'' Undoubtedly, if those rights are equitable ones, they may be asserted in a court of equity. The general rule is that where a contract is illegal, ''a court of equity may, in the furtherance of justice and of a sound public policy, aid the one who is comparatively the more innocent, and may grant him full affirmative relief, by canceling an executory contract, by setting aside an executed contract, conveyance or transfer, by recovering back money paid or property delivered, as the circumstances of the case shall require * * * .'' 2 Pomeroy's Equity Jurisprudence, sec. 942, p. 2,000 (4th ed.). In our view the cross-complainant, the William R. Johnston Manufacturing Company, is entitled to equitable relief. The remedy at law, in our opinion, would not be adequate. The cross-complainant could not be restored to its *status quo* before the contract in a proceeding at law; and we think that the cross-complainant is entitled to be restored to its *status quo.* It would be unjust and inequitable to allow the cross-defendant, the American Standard Metal Products Corporation, to profit by its own wrong. If the American Standard Metal Products Corporation is permitted to retain the $5,000 cash payment, it would

552 APPELLATE COURTS OF ILLINOIS.

The Auto. M. Co. v. The Amer. S. M. P. Corp., 232 Ill. App. 532.

be obtaining a direct and valuable benefit from a contract which is void and not enforceable by it. The cross-complainant, the William R. Johnston Manufacturing Company, has not violated the statute, and should not be the party to be penalized by the statute and be made to suffer a loss by reason of the statute. There is an authority, although not in Illinois, which expressly holds that equitable relief may be granted to a party to a contract which was held to be void as to a foreign corporation, by reason of the failure of the corporation to comply with statutory requirements. This precise question has not been decided by the courts of Illinois.

In the case of *Hanchey v. Southern Home Building & Loan Ass'n,* 140 Ala. 245, a bill in equity was filed against the Southern Home Building & Loan Association by a member of the association for the purpose of having the contract under which he had borrowed money rescinded and the mortgage securing the contract canceled. One of the allegations of the bill was that the Southern Home Building & Loan Association was a foreign corporation, and had taken the loan, bond and mortgage without having complied with the statutes requiring foreign corporations to do business in the state. The court said (pp. 246, 247): "This allegation, taken as true, shows a failure on defendant's part to do that which under the statute (Code 1896, § 1316) was made a condition to its right to do business here, and consequently that the bond and mortgage are void. * * * If the bond and mortgage are void for the reason mentioned, defendant is not bound by their stipulations, and is entitled to have them cancelled, if, as averred in the bill, 'he has paid back to said corporation the principal of the debt, together with legal interest'; the obligation to restore the money borrowed with interest being imposed upon him not by contract, but by the principle which required one seeking relief in equity to himself do equity."

It has been held that a taxpayer can maintain a bill in equity to prevent a municipality from paying money on a void contract.

In the case of *Allen v. City of Milwaukee,* 128 Wis. 678, a taxpayer brought a suit against the City of Milwaukee to restrain the city from paying out money upon a contract made by the city with a foreign corporation which had not complied with the requirements of a statute at the time of the bidding or the execution of the contract. The court said (p. 687): "the contract attempted to be made by the board of public works was illegal and, therefore, void * * * by the provisions of sec. 1770b, Stats. 1898. This statute provides that contracts of a foreign corporation which has not complied with the requirements of that section 'shall be wholly void on its behalf * * * but shall be enforceable against it.' That such enactment is intended to be enforced according to its words was decided in *Ashland L. Co. v. Detroit S. Co.,* 114 Wis. 66, 89 N. W. 904. Confessedly, when the contract in question was made, the defendant Central Bitulithic Paving Co. had not complied with the conditions of sec. 1770b, Stats. 1898. It has, therefore, no legal right to demand, nor is the city under any legal obligation to pay, any money by reason of the contract. The right of a taxpayer to enjoin the payment by the city officers of money which the city does not owe is most thoroughly established by a long line of our own decisions, only a few of which need be cited."

Counsel for the cross-defendants contend that even on the assumption that the contract is void, the cross-complainant, the William R. Johnston Manufacturing Company, "has no right to receive the $5,000 and expenses incurred, because of its breach of the contract and because of its persistent course of unfair dealing"; that the cross-complainant "now has no standing in a court of equity and is not entitled to recover back the money paid at the time of the execution of

554    APPELLATE COURTS OF ILLINOIS.

The Auto. M. Co. v. The Amer. S. M. P. Corp., 232 Ill. App. 532.

the contract." The acts which counsel for the cross-defendants maintain constitute "unfair dealing" on the part of the cross-complainant, and which bar the cross-complainant from equitable relief, are stated by counsel as follows:

"(a)   The Johnston Company has had the benefit of the contract and is the one in default; (b) Exhibition by Mr. Johnston to Mr. Burdick on May 16th or 17th, of draft of contract between the Johnston Company and E. B. Cadwell, individually, which contract was to supersede the contract of February 19, 1921, but was never executed, together with representations by Mr. Johnston to Mr. Burdick that Mr. Cadwell had claimed to be the sole owner of the patents to the oiler; (c) Execution of contract of June 25, 1921, between Automotive Material Company and the Johnston Company in defiance of the injunction running against the latter; (d) Refusal of the Johnston Company to pay for the oilers delivered to it under the contract of June 25, 1921; (e) Filing of petition by Robert Felch, an employee of the Johnston Company, and two others, to have Automotive Material Company adjudged bankrupt; (f) Contention of the Johnston Company that the oiler was not workable and that it never received a finished sample."

In the view we take of the case, it is unnecessary to determine whether the evidence shows that the cross-complainant has been guilty of the acts charged or not; as, in our opinion, even if committed, they would not defeat the right of the cross-complainant to recover. The contention of counsel for the cross-defendants seems to proceed on the theory that the cross-complainant is seeking to enforce the contract between it and the cross-defendant, the American Standard Metal Products Corporation. The contention of counsel for the cross-defendants implies that the cross-defendant, the American Standard Metal Products Corporation, has legal rights in the contract, and that the cross-complainant has violated the contract. The fact is that the contract is absolutely void as to the cross-defendant, the American Standard Metal Products

CHICAGO—FIRST DISTRICT—APRIL, 1924.    555

The Auto. M. Co. v. The Amer. S. M. P. Corp., 232 Ill. App. 532.

Corporation, and that corporation has no legal rights whatever in the contract. This being so, the cross-defendants are in no position to complain of any acts of the cross-complainant which would amount to a default on the contract. So far as the cross-defendants are concerned, there could be no default on the contract, since the contract is absolutely void as to the cross-defendant, the American Standard Metal Products Corporation. The cross-complainant could not maintain an action on the theory of a breach of contract by the cross-defendant, the American Standard Metal Products Corporation, but may, as in the case at bar, predicate its action on the ground that the cross-complainant innocently entered into a contract which by reason of the statute was void as to the cross-defendant, the American Standard Metal Products Corporation, and that in consequence the cross-complainant suffered a legal injury. The statute does not provide for relief such as that asked for by the cross-complainant, and was not primarily enacted for the benefit of persons claiming contractual rights, but the statute is the expression of a state policy directed toward foreign corporations, and the relief sought by the cross-complainant results as a logical incident from the statute. *Osborne & Co. v. Shilling, supra; Parke, Davis & Co. v. Mullett, supra.*

Another act, which counsel for the cross-defendants maintain, bars the right of the cross-complainant to recover, is that the cross-complainant "induced the original complainants to file the bill of complaint and to obtain the injunction in the case, and immediately thereafter entered into the contract with Automotive Material Company in violation of the injunctive order." The evidence does not support this contention of counsel for the cross-defendants; but if it did, the rights of the cross-defendants were not in any way injured. The act complained of did not affect the position of the cross-defendants in respect of the contract with the Automotive Material Company. That

556        APPELLATE COURTS OF ILLINOIS.

The Auto. M. Co. v. The Amer. S. M. P. Corp., 232 Ill. App. 532.

contract was void before the act, as it was after the act. The right of the original complainants to file their bill existed independently of any solicitation in that respect by the cross-complainant. If the original complainants were induced to file their bill by the cross-complainant, the original complainants were only exercising their legal right. The fact that the original complainants may have been induced to file their bill by the cross-complainant, did not change the right of the original complainants into a wrong.

In support of their contention that the cross-complainant is not entitled to recover back the $5,000 paid by it to the cross-defendant, the American Standard Metal Products Corporation, counsel for the cross-defendants cite by way of analogy the cases of *Collier v. Coates,* 17 Barb. (N. Y.) 471; *Harris v. Frink,* 49 N. Y. 24; *Weller v. Dusky,* 51 Okla. 77, which involve actions arising on the statute of frauds. The decisions in those cases held substantially that where a person has paid money upon a parol contract for the purchase of land, which contract is void by the statute of frauds, he cannot maintain an action to recover back the money so paid, where the other party is ready and willing to carry out the parol contract. That is a correct statement of the rule according to the weight of authority where the contract is held to be voidable and not void; but it is just the reverse of the rule in those states where the contract is held to be absolutely void. 34 Ann. Cas. 1914 D, p. 471. Where a parol contract for the purchase of lands is held to be absolutely void under the statute of frauds, the purchaser may repudiate it and maintain an action to recover back the money paid under the contract, while the contract remains executory. *Scott v. Bush,* 26 Mich. 418; *Flinn v. Barber,* 64 Ala. 193; *Tucker v. Grover,* 60 Wis. 233; *Brown v. Pollard,* 89 Va. 696. In Illinois the rule is that a parol contract for the purchase of land is not absolutely void, but only voidable, and a person who advances money in

part payment of such a contract cannot recover the money back until he has offered to fulfill the contract on his part, and the other party has repudiated the contract. *Crabtree v. Welles,* 19 Ill. 55; *Ryan v. Shoenberger,* 224 Ill. App. 308, 311. But irrespective of the question whether a parol contract for the purchase of land is absolutely void, or only voidable, under the statute of frauds, and irrespective of the question whether money paid under a contract within the statute of frauds can or cannot be recovered back, cases arising under the statute of frauds bear little or no analogy to the case at bar. The nature and purpose of the statute of frauds are materially different from the nature and purpose of the statute regulating foreign corporations in Illinois. The statute of frauds is intended as an equal protection to both parties to a contract for the purchase of land. The statute regulating foreign corporations does not operate equally as to both parties to a contract void under the statute, but is intended to penalize only one of the parties to the contract, namely, the foreign corporation. It is not a violation of law for parties to convey land by parol contract. As was held (p. 475) in the case of *Collier v. Coates, supra,* cited by counsel for the cross-defendants, such a contract is "neither immoral nor illegal. It is one which the parties had a right to make and carry out." But a contract with a foreign corporation doing business in the State of Illinois without a certificate of authority is "immoral" and "illegal," in that it is a violation of a penal statute. The parties to such a contract have no right to make and carry out the contract. The parties to a contract within the statute of frauds may waive the statute; and it will be deemed to be waived if it is not pleaded, or in some way expressly relied upon. *Chicago Attachment Company v. Davis Sewing Mach. Company,* 142 Ill. 171, 186. But the parties to a contract within the meaning of the inhibition of the statute regulating foreign corporations in the State of

558    APPELLATE COURTS OF ILLINOIS.

The Auto. M. Co. v. The Amer. S. M. P. Corp., 232 Ill. App. 532.

Illinois could not waive the statute as it is a penal statute wholly independent of the control of individuals. The rule in regard to the right to waive a statute is stated as follows: "A person may lawfully waive by agreement the benefit of a statutory provision. But there is an exception to this general rule in the case of a statutory provision whose waiver would violate public policy expressed therein." 13 Corpus Juris, pp. 423, 424. If the parties to a contract, void within the meaning of the statute regulating foreign corporations in Illinois, agreed to waive the statute, and to carry out the contract, they could be prosecuted for a criminal conspiracy to violate a penal statute. The fact, therefore, that the cross-defendant, the American Standard Metal Products Corporation, is ready, willing and able to perform the contract is not a matter that can be considered by the court. The fact merely indicates that the cross-defendant, the American Standard Metal Products Corporation, is ready, willing and able to violate the statute, if permitted to do so by the court. It is obvious that the court should not allow the cross-defendant, the American Standard Metal Products Corporation, to do the very thing which the statute forbids. Nor should the court permit the cross-complainant, the William R. Johnston Manufacturing Company, to join with the cross-defendant, the American Standard Metal Products Corporation, in carrying out a contract which is in violation of a penal statute enacted as an expression of public policy by the state. In its attitude of offering to carry out the contract, the cross-defendant, the American Standard Metal Products Corporation, is, in effect, seeking to enforce the contract. The following excerpt from the decision in the case of *Cincinnati Mutual Health Assurance Company v. Rosenthal, supra,* where the court was speaking of the effect of allowing a similar contract to be enforced, is applicable to a situation such as the one presented by the cross-defendant, the Amer-

ican Standard Metal Products Corporation (p. 91):
"The note was made and delivered, and the policy given and the contract consummated in this State, in defiance of a law which is so plain in terms, that it can bear no construction, and which no one can misunderstand, declaring all such contracts unlawful. It says, it shall not be lawful for any such agent, directly or indirectly, to take risks, or transact any business of insurance in this State, until they comply with the terms prescribed in the act. To permit the company, when they admit that they have disregarded all of these requirements, to recover, would be for the courts to disregard the clearly expressed will of the general assembly, and to say what it has said shall be unlawful, is and shall be lawful and binding. To enforce the payment of this note would be, virtually, to repeal a plain enactment of the legislature."

In the case of *In re Comstock,* 3 Sawyer (U. S.) 218, in which a foreign corporation which had not complied with the statutory requirements was contending that a party was estopped to deny that the corporation was doing business contrary to the statute, the court said (p. 229): "To allow this corporation by means of an alleged estoppel, which grows out of the very act prohibited, to indirectly do an act for which it has neither capacity nor right, would be practically to dispense with the limitation which the state has imposed upon its power of doing business therein."

Even if the cross-defendant, the American Standard Metal Products Corporation, subsequently qualified to do business in Illinois, the contract could not be carried out. In the case of *United Lead Company v. J. W. Reedy Elevator Mfg. Company, supra,* the court said (p. 202):

"The contract upon which this suit was brought having been entered into in this State when appellant was not permitted to transact business in this State, is in violation of the plain provisions of the statute,

and is therefore null and void, and no action can be maintained thereon at any time, even if the corporation should at some time after the making of the contract qualify itself to transact business in this State by a compliance with our laws in reference to foreign corporations that desire to engage in business here."

Counsel for the cross-defendants further contend that the case of *Mahar v. Harrington Park Villa Sites,* 204 N. Y. 231, is "a case on all fours with the case at bar." We do not agree with the contention of counsel. We think that there is a material difference between the two cases. In the case of *Mahar v. Harrington Villa Park Sites, supra,* it was held that a contract with a foreign corporation doing business in the State of New York without complying with the statute relating to foreign corporations, was not void, but merely could not be enforced by the foreign corporation; and that if the foreign corporation was ready and willing to carry out its contract, money which had been paid to the corporation could not be recovered back. In that case, the New York statute regulating foreign corporations is entirely different from the statute in Illinois. The court said in that case (p. 236) that the only penalty which the statute of New York imposed on a foreign corporation for doing business without complying with the statute, was the penalty of being unable to sue upon the contract in the courts of the State of New York; that the contract "remains a valid and effective instrument in other respects." It has been expressly held that such a contract could be sued on by the corporation in any jurisdiction where the contract would not be considered void. *David Lupton's Sons Co. v. Automobile Club,* 225 U. S. 489, 499. The statute of Illinois regulating foreign corporations imposes a double penalty on such corporations when they enter into contracts in violation of the statute. There is a penalty of a fine, and a penalty of being unable to sue on the contract. Furthermore, such

contracts in the State of Illinois are absolutely void as to foreign corporations. We have previously shown that the rule which the court relies in the case of *Mahar v. Harrington Park Villa Sites, supra,* on by analogy, in relation to the statute of frauds, is only applicable where the contract within the statute of frauds is held to be not voidable but void. Where the contract is void, the money may be recovered back while the contract remains executory. The court in the case of *Mahar v. Harrington Villa Park Sites, supra,* inadvertently used the word "void" inaccurately in stating the rule in regard to the statute of frauds. But aside from these considerations we are of the opinion, as we have previously stated, that the cases arising under the statute of frauds do not present cases analogous to the case at bar.

It is further contended by counsel for the cross-defendants that the cross-complainant is not entitled to recover the $5,603.45 alleged to have been expended by the cross-complainant, for two reasons: first, that, as a matter of law, expenditures under the contract by the cross-complainant cannot be recovered; and, secondly, that there is no competent evidence showing such expenditures. Counsel for the cross-defendants maintain that the cause of action of the cross-complainant is not based upon a breach of contract by the cross-defendant, the American Standard Metal Products Corporation, but on the ground that the contract itself is void; and that the expenses "are not the natural and proximate results flowing from the fact that the American Standard Metal Products Corporation may or may not have been doing business in Illinois contrary to the statute, but result from the failure of the William R. Johnston Manufacturing Company to get orders." It is true, as counsel for the cross-defendants contend, that the cross-complainant's cause of action is not based upon a breach of contract by the cross-defendant, the American Standard Metal Products Corporation, and that the ex-

562 ·    APPELLATE COURTS OF ILLINOIS.

The Auto. M. Co. v. The Amer. S. M. P. Corp., 232 Ill. App. 532.

penditures cannot be recovered on the theory that they were incurred by reason of a breach of contract. We are of the opinion, however, that the expenditures were incurred by reason of the fact that the cross-defendant, the American Standard Metal Products Corporation, was doing business in Illinois without a certificate of authority, and that the contract was consequently void. We do not agree with the contention of counsel for the cross-defendants that the expenditures were incurred by reason of the "failure of the cross-complainant the William R. Johnston Manufacturing Company, to get orders."

The evidence shows that the expenditures were made on account of advertising, traveling expenses and salaries of salesmen, photos, art work and similar matters. We are of the opinion that the expenditures have been proved by competent and sufficient evidence. It is objected by counsel for the cross-defendants that it is not shown by the evidence that the services of the salesmen of the cross-complainant, the William R. Johnston Manufacturing Company, were devoted exclusively to work in connection with the contract. The evidence shows the expenses and salaries of three salesmen, Davey, Skehen and Anderson; and William R. Johnston, president and general manager of the William R. Johnston Manufacturing Company, testified that these three men were employed exclusively in connection with the "Oiler proposition."

It is further objected by counsel for the cross-defendants that an item of expense in the sum of $612.49 for the purchase of a Ford car was incurred a week before the contract was executed. In explanation of this item William R. Johnston testified that the Ford car was purchased to be used for the purpose of demonstrating the oiler at an automobile show held in Chicago in the Coliseum. Moreover, the Chancellor found that *before* the consummation of the contract the William R. Johnston Manufacturing Com-

pany began a sales campaign by solicitation and advertising and conducting exhibitions at various automobile shows.

Counsel for the cross-complainant contends that Cadwell, the president of the cross-defendant, the American Standard Metal Products Corporation, is personally liable, and in support of the contention cites the case of *Ryerson & Son v. Shaw, supra.* Counsel for the cross-defendants make no specific reply to this contention. In the case of *Ryerson & Son v. Shaw, supra,* it was held (pp. 531, 532) that: ''The general rule is, that a person who assumes to act as agent for a legally incompetent principal renders himself personally liable to the person with whom he deals unless such person knows of the want of authority * * * and one dealing with an officer or agent of a foreign corporation cannot be presumed to know that the corporation has not complied with the laws of the State.'' The evidence shows that Cadwell personally conducted the negotiations between the cross-defendant, the American Standard Metal Products Corporation, and the cross-complainant, the William R. Johnston Manufacturing Company, and represented that the American Standard Metal Products Corporation was the owner of the patents. There is a finding of the Chancellor to this effect, and the decree of the Chancellor is directed against Cadwell personally. In our opinion Cadwell is personally liable.

For the reasons stated, those parts of the decree of the Chancellor canceling the contract of February 19, 1921, entered into between the American Standard Metal Products Corporation and the William R. Johnston Manufacturing Company and holding that the contract was void; directing the American Standard Metal Products Corporation and E. B. Cadwell to return and deliver up to the William R. Johnston Manufacturing Company the four promissory notes of the William R. Johnston Manufacturing Company for the sum of $5,000 each; and taxing the costs of the

564    APPELLATE COURTS OF ILLINOIS.

The Auto. M. Co. v. The Amer. S. M. P. Corp., 232 Ill. App. 532.

proceeding against the cross-defendants, the American Standard Metal Products Corporation and E. B. Cadwell is affirmed. The parts of the decree of the Chancellor holding that the William R. Johnston Manufacturing Company is not entitled to the return of the cash payment of $5,000 and is not entitled to recover the money expended in conducting its sales campaign, namely, $5,603.45, are reversed. The cause is remanded with directions to the Chancellor to enter a decree for the return of the $5,000 cash payment and for the recovery of the $5,603.45, and for such other proceedings as are not inconsistent with this opinion. *Reversed in part; affirmed in part; and remanded with directions.*

McSurely, J., concurs.

Mr. Presiding Justice Matchett dissenting: With due deference, I must dissent in this case from the judgment of the court. In the first place, because I am inclined to think the finding of the trial court that the American Standard Metal Products Corporation was at the time of the execution of the contract on February 19, 1921, doing business in Illinois within the meaning of the act of the legislature which forbids a foreign corporation so to do before obtaining a license, according to the provisions of the act, is against the manifest preponderance of the evidence.

I am aware it is very difficult to deduce from the many decided cases the general rule which should be applied in determining when a foreign corporation is or is not doing business in this State within the meaning of that act.

The cross-defendants invoke the rule as stated in Corpus Juris, 14 A, 1279: "A foreign corporation is not doing, transacting, carrying on, or engaging in business in a state, within the meaning of the statutes under consideration, by the doing of acts therein which are merely preliminary to the transaction of the business for which the corporation is organized."

Here the acts which it is held amounted to doing

business within the meaning of the statute were, in my opinion, merely preliminary in their nature. The statute, as the opinion of a majority of the court indicates, is highly penal in its nature and therefore should be strictly construed, and upon such construction the finding ought not to be sustained.

Again assuming that the statute was applicable and that the American Standard Metal Products Corporation was doing business in the state contrary to its provisions, and that the foreign corporation could not therefore bring an action upon the contract and that it must, in that sense, be held to be void, it by no means follows that the domestic corporation which, without knowledge of the foreign corporation's disqualifications, entered into a contract with it, could not maintain an action upon the contract thus made. In other words, although by reason of the provisions of the statute, the contract in a suit brought thereon by an unlicensed foreign corporation should be held void, in a suit brought upon the same contract by the domestic corporation against the foreign corporation, the contract would be held valid. The one party is precluded and estopped but the other party is neither precluded nor estopped.

If the American Standard Metal Products Corporation sued at law either on the contract or the notes, the contract would in such suit be held void and the plaintiff corporation could not recover by reason of the statute irrespective of the merit of its suit; but if the Wm. R. Johnston Manufacturing Company brought a suit at law upon the contract, it could, upon making the proper proofs, recover on it.

Whatever the rule at law might be, the parties here have seen fit to appeal not to a court of law but to a court of equity, and a court of equity is always a court of conscience, granting relief only where the requirements of justice and fair dealing demand that the relief should be given. The precise question which arises on this record is whether in a court of chancery,

a contract void as to one party but valid as to the other by reason of a statute, may be rescinded in a court of equity at the suit of a party complainant who can maintain an action at law thereon, where the defendant has not violated any of the terms of the contract and is ready, willing and able to perform all the terms of the contract. The affirmative of the proposition is not consonant with natural justice. The precise question not having been decided in this state, I think the court should follow the dictum of the court of appeals of New York in *Mahar v. Harrington Park Villa Sites*, 204 N. Y. 234.

I think the Chancellor erred in decreeing a cancellation of the contract, and that the decree should be reversed and the cause remanded with directions to dismiss the cross-bill for want of equity.