154 So.2d 351 (1963)
UNITED HOMES, INC., a Florida corporation, Appellant,
v.
Martin I. MOSS and Harry Abel, Appellees.
No. 3452.
District Court of Appeal of Florida. Second District.
June 14, 1963.
*352 Ezra J. Regen and Gale K. Greene, Sarasota, for appellant.
I.R. Ludacer, of Harkavy, Doyle, Feigin, Hasson & Ludacer, and Henry P. Trawick, Jr., of Kirk, Pinkerton, Sparrow & Trawick, Sarasota, for appellees.
SMITH, Judge.
The appellant corporation, as plaintiff below, filed its amended complaint in chancery, setting out two counts. Count I was directed against both defendants, Martin I. Moss and Harry Abel, the appellees here. Count II, relating to the same transactions and events, was directed only against the defendant Moss. The lower court dismissed with prejudice Count I as it related to the defendant Abel, finding that this count did not allege facts setting up a legal duty running from the defendant Abel to the plaintiff corporation and did not allege any facts establishing a right on the part of the plaintiff corporation to rely on the alleged representations made by the defendant Abel. It is from this order as it concerns Count I that the plaintiff corporation appeals. The court allowed the plaintiff to amend as to the defendant Moss; therefore, this appeal does not involve that portion of the order.
Taking as true the allegations contained in Count I of the plaintiff's amended complaint, we summarize the "facts" as follows: The plaintiff corporation was organized for the purpose of buying, developing and selling real estate in Florida. Moss was one of the original incorporators of the plaintiff corporation; he also serves as an officer and director of the corporation. Abel, a licensed real estate broker, was personally acquainted with all of the incorporators of the corporation, and it was upon his advice and suggestion that the corporation was organized. The activities of the corporation were centered in and about Sarasota County. The only one of the officers and directors of the corporation who resides in the Sarasota County area is Moss, and for this reason the non-resident officers and directors reposed their faith and confidence in Moss to act at all times in the best interests of the corporation, to make full disclosure of all facts pertaining to any transaction involving the corporation, and to refrain from realizing any personal gain or profit at the expense and disadvantage of the corporation. Moss had sole and exclusive custody and control of all corporate records and was intimately familiar with the corporation's business affairs.
Moss and Abel jointly conspired and agreed to defraud the corporation. More particularly, the defendants agreed that each of them would recommend to the corporation the purchase of a certain parcel of real property in Sarasota County, which property was owned by a resident of Canada who was asking $70,000 for it. The defendants agreed to represent to the corporation that the property was owned by a New York couple and that the purchase price was $100,000. The defendants further conspired and agreed that, once they gained the corporation's approval to purchase the property, they would use corporate funds to acquire the property for $70,000 and realize a secret profit upon reconveying to the corporation for $100,000.
In furtherance of this conspiracy, Moss and Abel each made repeated representations to the non-resident officers and directors that the property was owned by a New York couple who were anxious to sell for a price of $100,000, of which $42,000 would be paid in cash and the balance by the corporation's execution of a note and purchase money mortgage. Moss and Abel represented to the corporation that they were experienced in real estate values in and about Sarasota County, that the $100,000 sale price was fair and reasonable, and that the property could be held for investment or for development. The defendants repeatedly urged the non-resident officers and directors of the corporation to approve the purchase of the property and to authorize the defendants to negotiate the purchase and handle all details concerning the acquisition of the property. Moss and Abel both knew *353 that the property was in fact owned by a resident of Canada and that the actual sale price of the property was $70,000, but they deliberately concealed these facts from the corporation with the intention of deceiving and defrauding said corporation.
Moss entered into a written contract with the real owner of the property, pursuant to which contract Moss agreed to purchase the property in his own name for $70,000, of which amount $12,000 was to be paid in cash and the balance of $58,000 by Moss executing a note and purchase money mortgage. Moss advanced to the seller the sum of $2,000 as a deposit on the said contract.
In furtherance of the conspiracy, Abel went to Cleveland, Ohio, where he met with all of the stockholders, officers, and directors of the corporation (with the exception of Moss). With full knowledge that Moss had already contracted to purchase the property in his own name for $70,000, advancing the sum of $2,000 as a deposit, Abel represented to the corporate officials that this property, owned by "a New York couple," could be acquired by the corporation for $100,000 by paying $42,000 down and executing and delivering the corporation's note and purchase money mortgage for the balance. Abel represented to the corporation that Moss had already obtained an option to purchase the property in behalf of the corporation and that Moss had personally advanced the sum of $10,000 as a deposit on the purchase. Willfully and deliberately concealing from the corporation the true facts, Abel urged the corporation to approve and confirm the purchase by Moss and to allow him, Abel, to act as the corporation's escrow agent and assist Moss in closing the transaction. Pursuant to his request, the corporation issued and delivered to Abel three checks: one check for $10,000, payable to Moss for reimbursement for the deposit in that amount supposedly made by Moss; a second check for $32,000, payable to Abel, representing the balance of the supposed cash down payment on the purchase price of the property; and a third check for $800, payable to Abel, to cover expenses in closing the transaction.
Moss, acting as Secretary of the corporation, countersigned the three checks and endorsed to Abel the $10,000 check. Thereafter, Abel deposited the three checks in his own "agency" account, with full knowledge of the purpose for which the said checks had been delivered to him by the corporation.
Using the funds that the corporation had advanced to them for the purpose of acquiring the property in the name of the corporation, Moss and Abel caused title to the property to be taken in the name of Moss, who paid to the seller the $10,000 remaining to be paid on the $12,000 cash down payment and executed a note and purchase money mortgage to cover the $58,000 balance of the purchase price. On the same day that he acquired title to the property, Moss, joined by his wife, executed and recorded a deed (witnessed by Abel), conveying title to the said property to the plaintiff corporation.
Moss and Abel refused to furnish the corporation with a closing statement or with copies of any of the pertinent documents of this transaction, although requests for the same were duly made by the corporation. Having reposed their trust and confidence in Moss as an officer and director of the corporation, and in Abel as the corporation's escrow agent, the non-resident officers and directors had no reason to suspect the fraud that had been perpetrated upon the corporation by the defendants until the former real owner of the property furnished the corporation with a copy of the actual closing statement.
At all times herein mentioned, Moss and Abel each occupied a position of trust and confidence with respect to the plaintiff corporation, and each owed a fiduciary duty to the plaintiff corporation to exercise the utmost good faith and to make full disclosure of all facts within his knowledge pertaining to this transaction, by reason of *354 the facts that Moss was an officer and director of the corporation, and Abel, upon whose representations the corporation relied in consenting to the purchase of the property in accordance with the terms proposed by the defendants, was a registered real estate broker entrusted with corporate funds and authorized by the corporation to act as its escrow agent in closing this transaction. As a fiduciary, each of the defendants was precluded from making any secret profit or deriving any personal advantage at the expense of the corporation. The conduct of each of the defendants constituted a breach of such aforesaid trust.
The defendants have refused to account to the corporation for the moneys advanced to them or to make restitution for any moneys obtained, converted, or withheld by them. The complaint prayed for an accounting and for judgment for the amount due the plaintiff corporation by reason of the defendants' aforesaid violations of trust.
For the purpose of passing on a motion to dismiss a complaint, the court must assume that all facts alleged are true, and the allegations must be construed in the light most favorable to the plaintiff. If the complaint states any grounds for equitable relief, it should not be dismissed. We conclude that Count I of the complaint herein stated a cause of action against the defendant Abel; thus, we reject Abel's contention that, in order to state a cause of action against him, the complaint should have alleged that Abel was acting on behalf of the corporation as its real estate broker.
The facts alleged in the complaint disclose that Moss, as an officer and director of the corporation, had a fiduciary duty to the corporation; that Moss violated such fiduciary duty; that Moss perpetrated a fraud upon the corporation; that Abel actively participated in the perpetration of such fraud; and that Abel shared in the fruits of the fraud. Even if it could be said that Abel was a stranger to the corporation, he participated with an officer-director of the corporation in the commission of an act constituting a breach of duty owed by the officer-director to the corporation. The "stranger", then, equally with the officer-director, committed a wrong and ought not to be allowed to derive profit from it. 3 Fletcher Cyc. Corp., § 947. See also 6 Fla.Jur., Conspiracy, § 12.
Although it is not alleged that Abel was acting as the broker for the corporation, there is the allegation that Abel was a registered real estate broker and that he acted as escrow agent for the corporation in disbursing its funds. In Florida, a real estate broker occupies a status under the law with recognized privileges and responsibilities. In many situations involving real estate brokers, the general rule that an agent is responsible only to his principal has no application. Those dealing with a licensed broker may naturally assume that he possesses the requisites of an honest, ethical man; and where a real estate broker is acting as agent for the seller, he nevertheless owes a duty to the buyer. Zichlin v. Dill, 1946, 157 Fla. 96, 25 So.2d 4. As was stated in Prescott v. Kreher, Fla.App. 1960, 123 So.2d 721, 727:
"There is a fiduciary relation between parties where confidence is reposed by one and a trust accepted by the other. * * * Such a relation has been said to exist and to suffice as a predicate for relief in all cases wherein influence has been acquired and abused, or wherein confidence has been reposed and betrayed. The origin of the confidence is immaterial. The principle applies both to technical fiduciary relations and to informal relations wherein one man trusts in and relies upon another. * * *" (Emphasis added.)
The complaint alleges a cause of action against Abel. The order dismissing Count I of the complaint is reversed.
KANNER, Acting C.J., and ALLEN, J., concur.