Arthur E. Blyn, J.
This ease involves an action for architectural services rendered by the plaintiff to the defendant.
*666 At trial it developed that the plaintiff, employed by a firm of architects, but not himself a licensed architect, was retained by the defendant, a restaurant operator, to prepare drawings and plans in connection with a new restaurant to be opened and operated by the defendant. The defendant paid the plaintiff the sum of $2,500 at the time of the oral retainer agreement and subsequently a contract setting forth various phases of the work to be done and corresponding schedule of fees for each stage of the completed work was executed.
There was a great deal of testimony as to whether the plans and drawings prepared by the plaintiff were satisfactory, both by the plaintiff, and a witness, a licensed architect, on behalf of the defendant. The threshold question, however, is whether the plaintiff, admittedly not a licensed architect, can recover for the architectural services performed.
There was no question that the plaintiff’s employer, licensed architects, had nothing to do with the work done by the plaintiff. This was done personally by the plaintiff on his own, as an ‘ ‘ architectural consultant ” as he styled himself in his testimony and on his business letterheads. The defendant’s first defense is that the plaintiff, not being licensed, cannot recover.
The plaintiff, obviously disagrees, and relies on two cases for his contention that section 7302 of the Education Law does not prohibit his recovery. (Roth v. Hoster Realty Co., 119 Misc. 686; and Bintz v. Mid-City Park Corp., 223 App. Div. 533.)
The decisions in both cases involved the then article 7-A of the General Business Law. Section 77 of article 7-A as it existed in 1922 and 1928 could be and was interpreted as merely requiring that before a person could hold himself out to be a “ registered architect ”, or use the initials “ R.A. ”, he must have secured a certificate pursuant to other sections of the same article 7-A.
In 1929 the Legislature rewrote section 77 (Education Law, § 1476, as enacted by L. 1929, ch. 572, § 1) to provide in unequivocal language that ‘ ‘ In order to safeguard life, health and property, no person shall * * * practise architecture, in this state, or use the title architect * * * unless such person shall have secured from the regents a certificate as registered architect ”. This express prohibition has been carried forward in each subsequent revision of the statute and is now known as section 7302 of the Education Law. . It has been construed to mean exactly what it says, so that recovery has been denied those doing architectural work without having a license. (American Store Equip. & Constr. Corp. v. Jack Dempsey’s Punch Bowl, *667 174 Misc. 436, affd. 258 App. Div. 794; Industrial Installation Corp. v. Sparer, 74 N. Y. S. 2d 198.)
Since the purpose of the licensing statute is the safeguarding of the life, health and property of our citizens, it should be strictly enforced. The Appellate Term, First Department, in Wormuth v. Lower Eastside Action Project (71 Misc 2d 314), dealing with a motion to dismiss the complaint or in the alternative for summary judgment, on the grounds that the plaintiff was not a licensed architect, denied the motion stating chat the questions raised should be dealt with at a trial. The facts in the moving papers revealed that the defendant knew that the plaintiff (an out of State architectural firm) did not have a New York license and waited until the architectural services were completed and then raised the question of license to avoid payment.
In the within case the court does not believe that the defendant knew the plaintiff to be unlicensed. In addition the defendant did not use the work product of the plaintiff. As a matter of fact the defendant after terminating the services of the plaintiff retained a firm of licensed architects to prepare new plans and drawings for the same restaurant and paid a very substantial fee for those services.
These facts distinguish the case at bar from Wormuth v. Lower Eastside Action Project (supra).
The plaintiff appears, from his testimony and letterhead, to be personally performing architectural services. Such activity is prohibited by section 7302. The plaintiff testified that he was familiar with the requirements of section 7302 but he was of the opinion that this did not bar him from rendering such services. He further testified that he knew other unlicensed persons who held themselves out to be “ architectural consultants” doing similar work.
If this statute is to have any effect such persons must be discouraged from carrying on such activities. The statute here sought to be enforced is akin to many licensed fields where the protection of the public is paramount. Examples are in the professions of medicine, dentistry, nursing, chiropractic, pharmacy, podiatry, optometry, engineering and of course law. Would one permit the unlicensed practice of any of these professions Í The court is of the opinion that the underlying public policy requiring licensing as proof of professional competence and responsibility outweighs all other considerations.
The court makes these findings of fact and law and awards judgment to the defendant dismissing the complaint. The defendant asserted a counterclaim for damages in the sum of *668 $10,000. The only damages proved however dealt with the retainer advance payment of $2,500. A consistent application of the reasoning of this decision requires that the court award judgment to the defendant on its counterclaim in the sum of $2,500.