301 So.2d 493 (1974)
Frank K. ELLIS et al., Appellants,
v.
Benjamin FLINK and Hilda Flink, His Wife, Appellees.
No. 74-322.
District Court of Appeal of Florida, Second District.
October 4, 1974.
Rehearing Denied November 6, 1974.
George E. Hovis, Hovis, Baird & Dougherty, Clermont, for appellants.
Christopher C. Ford and David E. Cauthen, Ford, Cauthen & Robuck, Tavares, for appellees.
SCHWARTZ, ALAN R., Associate Judge.
The defendants, who are Lewis O. Myhre, Sr., a registered real estate broker, his licensed salesman, Frank K. Ellis and Ellis's wife, have taken this interlocutory appeal from a partial summary judgment below, which ordered the cancellation and rescission of the instruments of record through which the Ellises acquired title to real property theretofore owned by the plaintiffs-appellees. We affirm.
In the middle of 1972, Ellis, while working for Myhre, secured a contract under which the Flinks agreed to sell the property in question to American Diversified Communities, Inc., for a purchase price of $200,000, net to the sellers. Under the agreement, the brokerage commission was to be paid entirely by the prospective vendee, American Diversified, for whom Ellis and Myhre stated they were alone acting as agents.
Prior to the once extended closing date of October 2, 1972, several significant things indisputably occurred. Ellis and Myhre, on the one hand, secured an active and viable prospective purchaser for the land at a price of $285,000. On the other hand, they became aware of the fact that *494 their supposed client, American Diversified, would not be financially able to close the transaction as required (and thus that the Flinks would become entitled to the $4,000 deposit.) The appellants informed the Flinks  whom Ellis admitted had reposed "trust and confidence" in him  of neither of these facts. Indeed, when Flink told Ellis that he did not wish to attend a closing if American Diversified could not come up with the necessary funds, Ellis did not tell him otherwise, on the ground that he knew, even though the Flinks did not, that "if worse came to worse, I would be providing those funds." In fact, that is what happened. Again completely unknown to the Flinks, the Ellises supplied the funds for "American Diversified" to close on October 2. Later that same day American Diversified conveyed title to the property to the Ellises.[1]
In this court, the Ellises and Myhre primarily contend that summary judgment was erroneously entered because, they say, there was at least a genuine issue of material fact as to whether they were acting as the Flinks' agents during the course of these transactions, as well as on behalf of the prospective purchaser, American Diversified. They contend that, in absence of a principal-agent relationship between them and the plaintiffs, they owed no duty to the vendors, and thus that the undisputed concealments and misrepresentations in which they engaged are not actionable by the Flinks.
We need not decide here whether the record below conclusively demonstrated a genuine issue of fact as to agency, because, as a matter of law, that issue could not be material. The law of Florida is very clear that the defendants, as real estate broker and salesmen, owed the Flinks, a duty of honesty, candor, and fair-dealing (which they obviously breached) even if there were no principal-agent relationship at all. Our Supreme Court squarely so held in Zichlin v. Dill, 157 Fla. 96, 25 So.2d 4 (1946), where the court stated at 25 So.2d 4-5:
"Ultimately we must determine just what duty the broker owed appellant. Did he owe a duty to any one except the owner who had listed the property? Evidently the chancellor was of the view that he owed no duty to the buyer. In this he was in error. Generally speaking an agent is responsible only to his principal. This, however, is different. The broker in Florida occupies a status under the law with recognized privileges and responsibilities. The broker in this state belongs to a privileged class and enjoys a monopoly to engage in a lucrative business. See Sec. 475.01 et seq., Fla. Stat., '41, F.S.A. The statute requires that (475.17): `* * * all applicants who are natural persons shall be competent, honest, truthful, trustworthy, of good character, and bear a reputation for fair dealing. * * *'
"The state, therefore, has prescribed a high standard of qualifications and by the same law granted a form of monopoly and in so doing the old rule of caveat emptor is cast aside. Those dealing with a licensed broker may naturally assume that he possesses the requisites of an honest, ethical man."[2]
Accord, e.g., Quinn v. Phipps, 93 Fla. 805, 113 So. 419 (1927); United Homes, Inc. v. Moss, Fla.App. 2d 1963, 154 So.2d 351, 354; Cases Collected, Annotation, Vendor's Broker  Liability to Vendee, 55 A.L.R.2d 342.
*495 It seems clear to us, that under these principles and on the undisputed facts,[3] the chancellor correctly ruled that the plaintiffs were entitled to judgment against the defendants as a matter of law.
Affirmed.
McNULTY, C.J., and GRIMES, J., concur.
NOTES
[1] Several interesting, if not legally determinative, things happened after the closing. On October 9, Ellis told the Flinks of the $285,000 purchase, and offered them the whole "profit" of $85,000 less the real estate commission on that sale. On November 29, the Ellises signed a contract on the property with still another prospective purchaser for $384,000. Unfortunately, this action, along with a lis pendens had been filed on November 17, so that this sale did not take place.
[2] There is of course no difference between Zichlin, in which the broker was supposedly acting for the seller, and was sued by the purchaser, and this case, in which the reverse is true.
[3] The appellants' brief suggests that no actionable fraud has taken place because the Flinks were not "damaged" by Ellis's concealments; the argument goes that the Flinks got exactly what they bargained for, the closing of the contract with American Diversified, and the payment  although by the Ellises  of the contract price. The complete answer is that Ellis was obligated to tell the Flinks that American Diversified could not close and to give the Flinks the option of knowingly doing what they actually did  sell the property to the Ellises. See Gammage v. Turner, Fla.App.2d 1967, 206 So.2d 252, 256. If he had also revealed what he in fact concealed  that there was a customer in the wings with a potential $285,000 offer  obviously the Flinks would have refused to go through with the $200,000 sale, and the Flinks would have retained the property. That is exactly what the judgment below effects.

In any event, Ellis is hardly in a position to argue that his concealments made no difference when he could have avoided any speculation about the issue merely by telling the truth.