DAVID P. RANSBURG *et al.*, Plaintiffs-Appellants, v. DAVID HAASE, Defendant-Appellee.

Third District   Nos. 3—90—0889, 3—91—0174 cons.

Opinion filed January 24, 1992.—Rehearing denied March 10, 1992.

Linda L. Laugges and John S. Elias, both of Keck, Mahin & Cate, of Peoria (Robert M. Riffle, of counsel), for appellants.

Mark W. Marlott, of Kavanagh, Scully, Sudow, White & Frederick, P.C., of Peoria (David J. Dubicki, of counsel), for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Plaintiffs David and Alexandra Ransburg appeal from orders of the circuit court of Peoria County which dismissed counts II, III, and V of their first amended complaint in an action filed against David Haase, defendant. Plaintiffs are seeking to recover $83,876.77 paid to defendant to design, decorate, and manage the construction of a residence in Vail, Colorado.

Both plaintiffs and defendant are residents of Peoria, Illinois. Defendant owns and operates a business in Peoria, David William Haase Associates, which designs and decorates houses. Plaintiffs allege that they entered into an oral agreement with defendant for him to provide professional services as an architect in connection with the design, construction and decoration of a duplex residence in Vail, Colorado. They further allege that the parties discussed the project and the parties' respective responsibilities several times during 1987, both in Peoria and in Colorado, and finalized the terms of the agreement on June 22, 1987.

According to the complaint, defendant promised "to act as the architect, construction manager, designer and decorator of the subject premises, and also to provide budgetary control for the project, and to otherwise monitor every aspect of the design, construction and furnishing of the residence." The parties allegedly agreed to a construc-

tion budget of $838,000 and a furnishing budget of $107,500, for a total project cost of $945,500. Defendant was to receive $80,000, including travel and other expenses, as compensation for his services. The scheduled completion date was December 15, 1988.

Count I of the complaint alleged defendant's breach of contract by failing to complete the project on time, by failing to provide sufficient drawings and specifications for use by the contractor, by failing to assure compliance with applicable building codes and easements, and by failing to control the budget. It is claimed that certain improvements were constructed over utility and public easements and on adjoining land and that the total cost of the project has exceeded $1,200,000. The breach of contract count is still pending in circuit court and is not involved in this appeal.

In count II plaintiffs reallege all of count I and further allege as an alternative that defendant represented himself to be an architect to plaintiffs and that he undertook to provide architectural services when in fact he is not a registered architect in Illinois or in any other State. Plaintiffs further assert that defendant has practiced architecture without an Illinois certificate of registration as required in section 1 of the Illinois Architecture Act (Ill. Rev. Stat. 1987, ch. 111, par. 1201), and, therefore, that the contract for architectural services was unenforceable and void as against the public policy of the State of Illinois.

The trial court dismissed count II for the stated reason that the Illinois statute requiring a person who practices architecture to be licensed in Illinois applies only to construction within Illinois.

In count III plaintiffs alternatively allege that defendant violated Colorado law by engaging in conduct intended to mislead the public into believing that he is an architect or by engaging in the practice of architecture without a license issued in Colorado, as required under the Architects Licensing Act (Colo. Rev. Stat. §12—4—113 (1990)). Plaintiffs further assert that the contract was unenforceable and void as against the public policy of the State of Colorado.

The trial court dismissed count III for reason that defendant did not violate the Colorado statute, which exempted work done for the construction of one-, two-, three- or four-family dwellings.

The trial court also dismissed count V, which purported to plead a cause of action based on an alleged violation of the Illinois Consumer Fraud & Deceptive Business Practices Act (Ill. Rev. Stat. 1987, ch. 121½, par. 262).

The trial court subsequently heard and denied plaintiffs' motion to reconsider the dismissal of counts II and III and made a finding that

there is no just reason for delaying enforcement or appeal. A notice of appeal from the order dismissing counts II and III was timely filed on December 17, 1990.

In the briefs and at oral argument before this court, plaintiffs seek a reversal of the court order dismissing count V as well as counts II and III. Our docket indicates that a second notice of appeal was filed by plaintiffs in this cause on March 8, 1991, and that on motion of plaintiffs the subsequent appeal was consolidated with the instant appeal in this court. However, no record was filed in the March 8, 1991, appeal, and the original record was not supplemented. Since the record on appeal does not contain an order indicating a Rule 304(a) finding as to the dismissal of count V, this court has no jurisdiction to review the dismissal of count V. Therefore, we shall limit our consideration here to the issues raised concerning counts II and III.

■ Assuming, as we must, that the facts well pleaded are true, the initial question is whether defendant acted in violation of the Illinois Architecture Act (Act) when he represented to plaintiffs that he is an architect and undertook to provide architectural services in connection with the construction of a residence in Colorado. Section 1 of the Act (Ill. Rev. Stat. 1987, ch. 111, par. 1201) states that it is "unlawful for any person to practice architecture or advertise or put out any sign *** which might indicate to the public that he or she is entitled to practice as an architect, without a certificate of registration." Section 2 defines the practice of architecture as follows:

> "The practice of architecture within the meaning and intent of this Act includes the offering or furnishing of professional services such as consultation, environmental analysis, feasibility studies, programming, planning, aesthetic and structural design, construction documents consisting of drawings and specifications and other documents required in the construction process, administration of construction contracts, project representation, and construction management, in connection with the construction of any private or public buildings ***." Ill. Rev. Stat. 1987, ch. 111, par. 1204.

The allegations in the complaint plainly charge defendant with offering professional services as an architect in Peoria, where he operated a design and decorating business. Regardless of where the services were ultimately furnished, holding himself out to plaintiffs as an architect in Illinois was a violation of the Illinois Architecture Act.

■ As a general rule, courts will not enforce a contract involving a party who does not have a license called for by legislation that expressly prohibits the carrying on of the particular activity without a

license where the legislation was enacted for the protection of the public, not as a revenue measure. (51 Am. Jur. 2d *Licenses and Permits* §66 (1970).) In other words, a person practicing a profession without a license cannot recover fees for services rendered. *E.g., Pascal P. Paddock, Inc. v. Glennon* (1964), 32 Ill. 2d 51, 203 N.E.2d 421.

■ The purpose of the Illinois statute prohibiting the practice of architecture without the required registration has long been held to be for the protection of the public. In *Hattis Associates, Inc. v. Metro Sports Inc.* (1975), 34 Ill. App. 3d 125, 127, 339 N.E.2d 270, 272, the court said:

> "The statute was not intended to protect architects by limiting the work to licensed architects. Rather, its real purpose was to protect the public from damage caused by the work of incompetent and unlicensed architects. *People ex rel. the State Board of Examiners of Architects v. Rodgers Co.* (1917), 277 Ill. 151, 115 N.E. 146."

Applying the general rule to the case before us, it does not appear that the contract between plaintiffs and defendant would be enforceable.

The trial court ruled that the controlling law was set out in the Florida case of *Rolls v. Bliss & Nyitruy, Inc.* (Fla. App. 1982), 408 So. 2d 229. In that case, a Florida firm contracted to provide architectural services for the construction of low cost housing in Algeria. One of the architects employed on the project was licensed in the Bahamas and other foreign countries but not in Florida. The Florida court held that the Florida licensing law protected the public from improper design and construction within the State of Florida and that the statute did not prevent a Florida cause of action to recover architect fees for the bargained-for services where those services related to a building constructed outside the borders of the State.

In our opinion *Rolls v. Bliss* does not control here. In the Florida case, the architect who lacked a Florida license was licensed in several other jurisdictions, while in the instant case, architectural services were offered in Illinois to residents of Illinois by an Illinois businessman who was not licensed to practice architecture anywhere. The Illinois statute was intended to protect Illinois residents in just such a situation as this.

Many of the cases cited to us by both parties, including *Rolls v. Bliss,* involved an action for fees due under a contract for architectural services performed by the plaintiff where the party who benefitted from those services asserted the plaintiff's lack of license as a de-

fense. As indicated above, Illinois has denied recovery in such cases. In *Keenan v. Tuma* (1926), 240 Ill. App. 448, 456, the court stated:

> "As here, however, the evidence shows that a substantial part of the architectural services contracted for were actually rendered and practiced not by a licensed architect in the employment of the plaintiff, but by the plaintiff himself and so constituted a violation of the statute, it follows that they could not become a valid consideration for the promise of the defendant, and so, in the eyes of the law the alleged contract of employment became a nullity. A promise to do or the doing of illegal things is not a good consideration for a promise to pay. In such a case the law affords no affirmative remedy, but leaves the parties where, by their own acts, they have placed themselves."

Accord *Pascal P. Paddock, Inc. v. Glennon* (1964), 32 Ill. 2d 51, 203 N.E.2d 421.

The question in the case before us is a different one: Do Illinois courts recognize a cause of action to recover money previously paid to defendant for architectural services which have been rendered but for which defendant was not licensed? Although it is a general rule that parties to a void contract will be left where they have placed themselves with no recovery of money paid for illegal services, exceptions to that rule have been recognized under two different rationales: (1) that the person who paid for the services is not *in pari delicto* with the unlicensed person, and (2) that the law in question was passed for the protection of the person who paid and it appears that the purposes of the law would be better effectuated by granting relief than by denying it. *Annot.*, 74 A.L.R.3d 637 (1976).

Recovery was allowed in a case involving a foreign corporation doing business in Illinois without a certificate of authority from the Secretary of State of Illinois. (*The Automotive Material Co. v. The American Standard Metal Products Corp.* (1924), 232 Ill. App. 532, *rev'd on another ground* (1927), 327 Ill. 367, 158 N.E. 698.) After observing that the statute governing foreign corporations was enacted for the benefit of the general public and its purpose cannot be bargained away by individuals, the court decided to allow recovery of money paid pursuant to the void contract, holding:

> "The general rule is that where a contract is illegal, 'a court of equity may, in furtherance of justice and of a sound public policy, aid the one who is comparatively the more innocent, and may grant him full affirmative relief, by canceling the executory contract, by setting aside an executed contract, convey-

ance or transfer, *by recovering back money paid* or property delivered, as the circumstances of the case shall require ***.' " (Emphasis added.) 232 Ill. App. at 551, quoting 2 Pomeroy's Equity Jurisprudence, §942, at 2000 (4th ed.).

Courts of other jurisdictions also have allowed recovery of money paid for professional services where the person rendering the service was not licensed. In *Rubin v. Douglas* (D.C. App. 1948), 59 A.2d 690, plaintiff sought to recover money paid to defendant for a treatment for arthritis after discovering that defendant was not licensed to practice "the healing arts" as required by statute. After noting that a court ordinarily will not interfere to give relief to either party to an illegal contract, the court went on to recognize an exception to that rule where the law in question was passed for the protection of the plaintiff and where it appears that the purposes of the law would be better effectuated by granting relief than by denying it. The court stated that the licensing law in that case was passed for the protection of the public, including the plaintiff, and then held:

"[T]he purposes of the Act will not be effectuated by permitting defendant to retain that which he ought not to have received. The public interests, in our opinion, are best served by requiring defendant to pay back the fruits of his illegal agreement." 59 A.2d at 691.

Accord *Bathroom Design Institute v. Parker* (D.C. App. 1974), 317 A.2d 526 (unlicensed contractor); *Wineman v. Blueprint 100, Inc.* (1973), 75 Misc. 2d 665, 348 N.Y.S.2d 721 (unlicensed architect). *Cf. In re Winston v. Kaspar American State Bank* (1962), 36 Ill. App. 2d 423, 184 N.E.2d 725. See also Annot. §5(b), 74 A.L.R.3d 637, 659 (1976).

Defendant relies upon those decisions in other jurisdictions denying recovery of money paid for service performed by one not licensed. For example, in *Design-4 v. Mason Mountainside Inn, Inc.* (1977), 148 N.J. Super. 290, 372 A.2d 640, a counterclaim to recover fees paid to a designer for architectural services was denied even though the contract had been held void because the designer was not a licensed architect as required by statute. The court observed that the counterclaimants were aware that the designer was not licensed to practice architecture and that counterclaimants had solicited the designer's advice and services; therefore, the law would leave the parties to the illegal contract where it found them. The instant case is readily distinguished because here there are no allegations that plaintiffs knew that defendant was not a licensed architect. To the contrary, plaintiffs allege that defendant represented himself to be a licensed architect.

Another case discussed by defendant is *Food Management, Inc. v. Blue Ribbon Beef Pack, Inc.* (8th Cir. 1969), 413 F.2d 716, where the court denied a counterclaim to recover fees paid to an architect licensed in Ohio but not in Iowa, where some of the services were rendered. The Federal court held: "To allow both retainment of services and recovery back of money paid is not necessary to effectuate the public policy of the licensing statutes *** because, as found by the trial court, [counterclaimant] obtained the service it had bargained for." 413 F.2d at 727. Accord, *Kempf v. Joint School District No. 3* (1959), 6 Wis. 2d 95, 94 N.W.2d 172.

■ We believe the public policy of Illinois to be better served by recognizing a cause of action here. To allow the unlicensed architect to retain the fees paid is to allow him to practice architecture in the State of Illinois without a license and to reap the rewards thereof. The purpose of the Illinois licensing act can best be effectuated by recognizing plaintiffs' right to recovery. The order of the trial court dismissing count II must, therefore, be reversed and this cause remanded for further proceedings.

■ As to count III, alleging a violation of the Colorado statute requiring architects to be licensed, we conclude that defendant comes within the exemption to the licensing requirement as set out in section 12−4−112 of the Architects Licensing Act (Colo. Rev. Stat. §12−4−112(1)(a) (1990)), which provides as follows:

"Exemption

(1) Nothing in this article shall prevent any person, firm, corporation, or association from preparing plans and specifications for, designing, planning or [supervising] the construction *** of any of the following:

(a) One, two, three, and four family dwellings, including accessory buildings commonly associated with such dwellings *** ."

Plaintiffs contend that defendant nonetheless violated a provision of the Colorado Architects Licensing Act which forbids "conduct which is intended or reasonably might be expected to mislead the public into believing that such person is an architect." (Colo. Rev. Stat. §12−4−113(b) (1990).) However, this provision is contained within the same article of the Colorado statutes as the exemption provision, and thus the exemption applies to it as well. In the absence of any citation of authority to the contrary, we must give the language of the act its plain meaning. We hold that defendant is exempt from any licensing or penalty requirements of the Colorado statute for the services rendered to plaintiffs in connection with the design and construction of a

duplex residence in Vail, Colorado. The trial court correctly dismissed count III.

■ Plaintiffs also claim that the trial court erred in refusing leave to amend count III when plaintiffs sought to do so because of recently discovered facts which support their claim that defendant misled the public. The "facts" consisted of documents signed by defendant as architect of the project which were allegedly intended to mislead bank officials, subcontractors, and the general contractor into believing that he was a licensed architect. As we have stated, defendant was exempt from any violation of the Colorado Architects Licensing Act for this two-family residence project. Hence, the trial court's refusal to allow plaintiffs to file an amended count III was not an abuse of discretion and will be affirmed.

Defendant argues that the dismissal order of the trial court should be upheld on the ground that plaintiffs have elected to recover for breach of contract in count I and cannot at the same time seek recovery on a theory that the contract was void as alleged in counts II and III. Defendant acknowledges that plaintiffs have pleaded alternative theories of liability and that alternative pleading is authorized under Illinois law. Defendant insists, however, that alternative pleading is limited to those situations where a party is in doubt as to which of two or more statements of fact is true. (Ill. Rev. Stat. 1989, ch. 110, par. 2—613(b).) Defendant reasons that plaintiffs here must know whether defendant represented himself as an architect and whether defendant provided architectural services, and therefore, plaintiffs must choose whether to proceed on a contract theory or on a theory that the contract was void.

■ We do not agree with defendant that the doctrine of election of remedies should be applied in this case. It is important to note that the instant case is still at the pleading stage. Obviously plaintiffs cannot *recover* on two inconsistent theories (*McCormick v. Kopmann* (1959), 23 Ill. App. 2d 189, 161 N.E.2d 720; *May v. Watt* (9th Cir. 1987), 822 F.2d 896), and acceptance of the benefit of one theory will bar a subsequently filed complaint alleging an inconsistent theory. For example, in *Benedetti & Sons, Inc. v. O'Malley* (1984), 124 Ill. App. 3d 500, 464 N.E.2d 292, plaintiff was not allowed to allege alternative counts for forfeiture of a real estate installment contract and for damages for breach of contract since plaintiff had already terminated the contract and taken possession of the property. In *Benedetti* the court noted that under the terms of the contract forfeiture was not an exclusive remedy, but that the provisions for other remedies must be construed to mean only that plaintiff might pursue such remedies

(*e.g.*, negligent damage to property) contemporaneously with forfeiture. Plaintiff's right to a cause of action based on the contract was held to have expired when plaintiff terminated the contract.

Unlike *Benedetti*, plaintiffs have not accepted benefits under either the theory of breach of contract or void contract. This case more closely resembles *Walsh v. Oberlin* (1971), 2 Ill. App. 3d 987, 276 N.E.2d 728, where the plaintiffs first filed a cause of action for rescission of the sale of certain stock on the ground that the defendant sellers had failed to register the securities for sale in Illinois as required by statute. After the complaint was dismissed, plaintiffs filed a second amended complaint which included a cause of action for common law fraud and deceit. This court stated:

> "The general rule is that the defrauded person may elect to accept the situation created by the fraud and seek to recover his damages, or he may elect to repudiate the transaction and seek to be placed in status quo. [Citation.] The rule is based on the recognition that the remedies are inconsistent and that the plaintiff by his conduct or election makes only one of such remedies appropriate under the circumstances." (2 Ill. App. 3d at 989, 276 N.E.2d at 730.)

We then held that the joining of inconsistent or alternative remedies did not constitute an election of remedies at the pleading stage. The same is true in the case at bar.

Defendant's contention that plaintiffs must know whether or not defendant represented himself as an architect is not persuasive. Plaintiffs could well know that defendant made such representations, but at the pleading stage plaintiffs may not know whether they can carry the burden of persuasion on that issue. The same is true for their breach of contract cause of action. Plaintiffs may believe that strategically it is too early to determine which action is the best one to pursue to completion. We hold that the doctrine of election of remedies does not apply to plaintiffs at this time.

For the reasons stated, we reverse the dismissal of count II of the complaint in this cause, affirm the dismissal of count III, and remand for further proceedings.

Affirmed in part; reversed in part and remanded.

STOUDER and HAASE, JJ., concur.