W. SHARP, Judge,
dissenting.
I respectfully dissent. This is a very close case, but one I do not think should be disposed of on the basis of the pleadings; ie., dismissal of a complaint for failure to state a cause of action against the Orange County School Board. K.W.’s and her mother’s allegations in the complaint must be read in a light most favorable to them, if there is any doubt, ambiguity or generality.[1]
Reading the complaint in this manner, it alleges KW.’s mother asked school employees for help regarding her fourteen-year-old daughter’s alcohol and substance abuse problems. A school counselor referred them to an outpatient treatment center, licensed by the Department of Health and Rehabilitative Services and operated by Ron Markham. The counselor did not give KW.’s mother any other choice of reference, contrary to the policy of the School Board. This may have economic consequences because KW.’s mother had to place K.W. with Markham to obtain school funding. Markham’s program was not one on the approved list of references for the school counselor.
When K.W.’s mother placed K.W. in Markham’s program, he insisted he be given twenty-four hour custody of the child, although his program was not licensed to have inpatient care and it was not licensed to place children in foster homes. Unknown to KW.’s mother and apparently the school counselor, Markham “placed” K.W. in his own home. Over a two and one-half month period of time, he engaged in sexual relations with the child, causing great harm.
Immediately after placing K.W. with Markham, K.W.’s mother felt misgivings. She called a school employee and inquired whether he had checked out Markham and his program. The response was that if the counselor thought Markham was “okay,” he was “okay” with the school employee.
This response could be understood as an affirmation that Markham had been cheeked out by the counselor and was qualified. Or, it could be taken as a refusal to do so, and that if KW.’s mother wanted school funding, she would have to “lump” it. Either one strikes me as a denial of a duty owed K.W. and her mother, since the child was placed *578 with Markham solely because of the school’s reference.
In my view, the school had at least a threshold duty to make a referral only to “approved” programs, or to make a special examination of those not specifically approved. We do not know, at this point in the proceedings, what the counselor did in this regard except that Markham’s program was not on the approved list. Further, K.W.’s mother’s specific inquiry about Markham, after meeting him, should also have triggered a follow-up by the school counselor, which was not done in this case.
As noted in McCain v. Florida Power Corporation, 593 So.2d 500, 503, n. 2 (Fla. 1992), duty may arise from the general facts of a case. Every person in Florida has a general duty to avoid negligent acts or omissions. The McCain court noted:
Where a defendant’s conduct creates a foreseeable zone of risk, the law generally will recognize a duty ... either to lessen the risk or see that sufficient precautions are taken.... (emphasis in original)
McCain at 503. The purpose of requiring licenses is for the protection of the public.[2] It seems to me that referral of students to a program not approved or properly licensed, defacto, creates a risk of harm. To conclude otherwise is to negate the reasoning for requiring a license.
The foreseeability of K.W.’s injury — sexual battery by Markham — is a jury issue.[3] Had Markham been cheeked out more carefully, the fact that he had a criminal record might have come to light, and the placement of K.W. in his program would not. have occurred. Further, had an additional conversation with K.W.’s mother taken place following her questions about Markham, the counselor might have discovered that Markham was not licensed to place children in foster homes on a twenty-four hour custody basis, and that the treatment being proposed for K.W. was inappropriate.
I do not think the sexual battery of a young female child consigned to the twenty-four hour custody of an adult male (particularly one with a criminal record) is “unforeseeable” in the least. For centuries our society and culture has insisted on chaperones for young girls (and more currently young boys) to prevent this very injury. I would reverse for further proceedings.

. Odham v. Foremost Dairies, Inc., 128 So.2d 586 (Fla. 1961); Warren v. Monahan Beaches Jewelry Center, Inc., 548 So.2d 870, 872 (Fla. 1st DCA 1989); Truesdell v. Proctor, 443 So.2d 107, 108 (Fla. 1st DCA 1983), rev. denied, 453 So.2d 1365 (Fla. 1984); United Homes, Inc. v. Moss, 154 So.2d 351 (Fla. 2d DCA 1963).

. Wineman v. Blueprint 100, Inc., 75 Misc.2d 665, 348 N.Y.S.2d 721 (N.Y. City Civ.Ct.1973); Markus & Nocka v. Julian Goodrich Architects, Inc., 127 Vt. 404, 250 A.2d 739 (Vt.1969).

. Foreseeability is generally a jury question. Gibson v. Avis Rent-A-Car System, Inc., 386 So.2d 520 (Fla.1980); Stewart v. Boho, Inc., 493 So.2d 95, 97 (Fla. 4th DCA 1986).