SECOND DIVISION

No. 1-10-1623

| | | |
|---|---|---|
| CESAR GAMBOA, RUBEN NAVA and MAURO LOPEZ, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 09 CH 48728 |
| JOSE ALVARADO and MARCO'S DIGITAL VIDEO AND PHOTOGRAPHY, INC., | ) ) ) ) | Honorable |
| Defendants-Appellees. | ) ) ) | William Maki, Judge Presiding. |

JUSTICE KARNEZIS delivered the judgment of the court, with opinion.

Presiding Justice Cunningham and Justice Connors concurred in the judgment and opinion.

## OPINION

Plaintiffs Cesar Gamboa, Ruben Nava and Mauro Lopez filed a complaint alleging common law fraud, unjust enrichment, civil conspiracy, intentional infliction of emotional distress and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2008)) (Consumer Fraud Act) against defendants Jose Alvarado and Marco's Digital Video & Photography, Inc. (Marco's Digital Photography). Plaintiffs alleged they were the victims of an "immigration scam" perpetuated by defendants wherein defendants falsely promised plaintiffs they would obtain legalization or citizenship documents for plaintiffs. Plaintiffs each paid

defendants $15,000 but defendants did not deliver on their promises and refused to return plaintiffs' money. The court dismissed the complaint, finding the underlying contract was illegal and thus unenforceable. On appeal, plaintiffs argue the court erred in dismissing their complaint because (1) illegality of contract is not a proper defense against the causes of action pled in their complaint; (2) illegality of contract is not a defense to the Consumer Fraud Act's regulation of immigration service providers; and (3) the court's public policy determinations were inconsistent with the public policy of the Illinois legislature and Illinois precedent. We reverse.

## Background

On December 7, 2009, plaintiffs (individually referred to as Gamboa, Nava and Lopez) filed a five-count verified complaint against defendants alleging (count I) violations of the Consumer Fraud Act; (count II) common law fraud; (count III) unjust enrichment; (count IV) civil conspiracy; and (count V) intentional infliction of emotional distress. The following course of dealings between the parties is taken from plaintiffs's complaint.

In early 2006, Alvarado told plaintiffs he could obtain "authentic citizenship documents" for plaintiffs through a contact at the United States Consulate office in Ciudad Juarez, Mexico, and plaintiffs would be able to use the documents to obtain social security numbers. He stated his contact could influence both American and Mexican immigration officials to expedite the application process but would need to pay employees in the different departments to obtain the necessary releases. The cost for

adjustments to legal permanent residency status would be $12,000 per person and to obtain United States citizenship would add an additional $3,000 per person.

Alvarado stated he and his brother were obtaining their citizenship documents through the contact and invited plaintiffs to join their group. He explained that once the contact obtained the necessary documents, the group would travel across the Mexican border and pick up the documents at the consulate office after having photos and fingerprints taken and a short interview. If plaintiffs could get their money to him by the end of June 2006, they could have their documents by October. Otherwise there would be a six-month delay.

Plaintiffs each made payments totaling $15,000 to Alvarado over a period of months and received receipts from Marco's Digital Photography in return for their payments. Alvarado explained he was providing receipts from his business to assure plaintiffs that the process was legitimate. Gamboa made some of his payments at Alvarado's home and at Marco's Digital Photography. Nava and Lopez alleged Alvarado used "high-pressure tactics" to get the payments by the June deadline, calling them weekly until they had paid in full. Nava did not make his final payment until October 2006. Alvarado informed plaintiffs that, because the deadline had not been met, there would be a delay and plaintiffs would not receive their documents until December 2006.

In February 2007, Alvarado told Gamboa that Gamboa's documents were ready and Gamboa needed to make plane reservations to fly to El Paso in order to cross the

border and get the documents. Gamboa went to Marco's Digital Photography where Alvarado "purchased" the reservations for $500 plus a $25 credit card fee. Shortly before Gamboa was to leave, Alvarado told him his Mexican contact would not be able to get the documents and the trip was cancelled. Alvarado refunded Gamboa's $500 but not the $25 fee.

Plaintiffs regularly called Alvarado inquiring about the status of their documents. Alvarado avoided plaintiffs. After repeated calls from plaintiffs, he told them that his contact had suffered a heart attack which would delay obtaining the documents. He gave Lopez his contact's phone number in Mexico. Lopez spoke to the contact, "Jose de Jesus Castellanos," who confirmed Alvarado's version of heart attack-induced delay. At some later point, Alvarado stated the delays were due to problems in Phoenix and El Paso, which "Castellanos" confirmed when Gamboa called him.

In March 2009, Alvarado met with plaintiffs and told them that there was nothing he could do for them. He stated they had all been swindled by Castellanos and it was necessary to bring legal action in Mexico. He requested plaintiffs each pay him $200 to hire a Mexican lawyer and sign a power of attorney. Lopez and Nava paid and signed the power of attorney. Gamboa refused and demanded his money back. Alvarado subsequently called Nava and Lopez, asking if they knew what Gamboa was planning and threatened them that if Alvarado "fell, they would all fall."

Plaintiffs pressed Alvarado to return their money. In September 2009, Alvarado told Nava and Lopez the lawsuit was no longer a viable option and explained his new

plan was to hire thugs in Mexico to kidnap Castellanos and get the money back from Castellanos in return for Castellanos' release. If Castellanos did not return the money, Alvarado implied the kidnappers would kill Castellanos. Nava and Lopez told Alvarado they were opposed to the violence and did not want to be part of the kidnaping scheme. On October 29, 2009, Alvarado told Nava and Lopez the kidnaping was on hold.

Plaintiffs' complaint alleged defendants engaged in numerous instances of unfair and deceptive practices in the conduct of trade or commerce in violation of section 2AA of the Consumer Fraud Act (815 ILCS 505/2AA (West 2008)), which governs private providers of immigration assistance services. Plaintiffs also alleged defendants committed common law fraud by inducing plaintiffs to rely on their misrepresentations; defendants were unjustly enriched by the monies plaintiffs paid them; defendants engaged in a civil conspiracy to defraud plaintiffs; and defendants intended to inflict emotional distress on plaintiffs by making the malicious statements that if Alvarado fell, they would all fall. Plaintiffs requested the court enjoin defendants from engaging in conduct relating to the provision of immigration services or in any of the deceptive practices charged and payment of assorted damages, including $45,000 to each plaintiff as the civil penalty provided for by section 2AA(m) (815 ILCS 505/2AA(m) (West 2008)).

Defendants filed a motion to dismiss pursuant to section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 *et seq.* (West 2008)). Defendants asserted that count I should be dismissed pursuant to section 2-619(a)(5) because it was not

commenced within the three-year statute of limitations for causes of action arising under the Consumer Fraud Act. They asserted the entire complaint should be dismissed pursuant to section 2-619(a)(9) because the agreement between the parties was an illegal contract that violated the law and public policy and courts refuse to enforce a contract when the purpose of the contract violates the law.

The court granted defendants' motion to dismiss on all counts on May 17, 2010. It filed an amended order granting defendants' motion to dismiss on all counts on June 9, 2010, explaining "this Court finds the facts, as pleaded in Plaintiffs' verified complaint, show that Plaintiffs and Defendants entered into an illegal contract that violates the law and public policy." It declared the order final and appealable. Plaintiffs filed their notice of appeal from the court's orders on June 9, 2010. The court having disposed of all matters before the court, we have jurisdiction to consider this timely appeal.

Analysis

Illegality of Contract

The court granted defendants' motion to dismiss as to all counts of the complaint pursuant to section 2-619(a)(9) of the Code, finding the facts as pleaded in the complaint showed the parties entered into an illegal contract that violates the law and public policy, and thus, per defendants' argument, is unenforceable. Section 2-619(a)(9) of the Code permits involuntary dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating

6

the claim." 735 ILCS 5/2-619(a)(9) (West 2008); *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). An " 'affirmative matter,' in a section 2-619(a)(9) motion, is something in the nature of a defense" which, although the moving party admits the legal sufficiency of the complaint, negates the cause of action completely. *Van Meter*, 207 Ill. 2d at 367; *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 383 (2004); *Neppl v. Murphy*, 316 Ill. App. 3d 581, 584 (2000). The defect, defense or affirmative matter must be apparent on the face of the pleading attacked or be supported by affidavit. *Borowiec*, 209 Ill. 2d at 383.

In reviewing a grant of a motion to dismiss, we accept as true all well-pleaded facts in the plaintiff's complaint, draw all reasonable inferences from those facts in favor of the plaintiff and interpret all pleadings and supporting documents in the light most favorable to the plaintiff. *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008); *Borowiec*, 209 Ill. 2d at 383. As with an appeal from a grant of summary judgment, we must consider "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law," and we review a court's grant of a section 2-619 motion to dismiss *de novo Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993); *Borowiec*, 209 Ill. 2d at 383.

Taking the well-pleaded facts in plaintiffs' complaint as true, there is no question that the verbal contract between defendants and plaintiffs was illegal. Indeed, defendants admit that the parties entered into a contact that violates Illinois and

Federal law and public policy. They correctly describe the parties' agreement as a "scheme" wherein the five members of the group agreed to obtain their residency or citizenship documents "by circumventing the normal, legal process that the public follows in obtaining such documents" such as by paying bribes and paying off government officials in violation of assorted criminal codes. Courts will not enforce an illegal contract, a contract that expressly contravenes either Illinois or Federal law and thus violates public policy. *Kim v. Citigroup, Inc.*, 368 Ill. App. 3d 298, 307 (2006). Illegality of contract is, therefore, a defense to actions seeking enforcement of a contract. *Kim*, 368 Ill. App. 3d at 307. Arguably, therefore, the illegality of the contract between plaintiffs and defendants would be a defense to plaintiffs' enforcement of the contract.

But plaintiffs are not seeking to enforce the contract. Rather, they are seeking to be reimbursed for the monies they paid defendants on the basis of the apparently fraudulent contract, costs they incurred as a result of the contract and assorted punitive damages including those provided for by section 2AA of the Consumer Fraud Act. As the basis for plaintiffs' claimed relief, they are asserting (1) violations of section 2AA of the Consumer Fraud Act; (2) common law fraud; (3) unjust enrichment; (4) civil conspiracy; and (5) intentional infliction of emotional distress. They do not, in any of these counts, seek enforcement of the agreement they had with defendants or assert a breach of contract claim. Illegality of contract, therefore, would not be a valid defense to plaintiffs' claims.

8

We do not find, notwithstanding defendants' argument to the contrary, that allowing plaintiffs to proceed with their claims would be tantamount to allowing them to enforce an illegal contact. Plaintiffs seek compensation for defendants' actions in violating the Consumer Fraud Act and in misleading them, in promising something they had no ability or intent to deliver with full knowledge that plaintiffs would be harmed financially and emotionally by their actions. We do not find that allowing plaintiffs' case to proceed would, as defendants assert, give "the parties' meeting of the minds legitimacy." Nor do we find that it will "send a message to those who lawfully engage in the process of obtaining immigration papers that if you do not accomplish your goal legally and through proper channels, then it is okay to do it by illegal means such as bribery and paying off corrupt officials within a government." On the contrary, allowing plaintiffs' claims to proceed will send a message to those unscrupulous individuals who mislead and prey on others by promising them immigration services they cannot deliver that there are ramifications for this antisocial behavior. These individuals cannot be allowed to use the very illegality of their agreement as a way to avoid the consequences of their actions.

Granted, generally, "parties to a void contract will be left where they have placed themselves with no recovery of the money paid for illegal services." *Ransburg v. Haase*, 224 Ill. App. 3d 681, 686 (1992). However, exceptions to this rule have been recognized where (1) the person who paid for the services was not *in pari delicto* ("in

equal fault"[1]) with the offender and (2) the law in question was passed for the protection of the person who paid for the services and the purpose of the law would be better served by granting relief than by denying it. *Ransburg*, 224 Ill. App. 3d at 686.

On the facts as they stand now, it appears plaintiffs were not *in pari delicto* with defendants: plaintiffs spoke little English, did not know defendants were lying/unable to deliver on their promises and would not necessarily know the agreement was illegal or that, as will be described below, they had recourse under section 2AA. Further, section 2AA was clearly passed for the protection of persons such as plaintiffs and would be best served if plaintiffs are allowed to proceed with their claims.

Section 2AA was created to deter the abuses allegedly committed by defendants here. In section 2AA, the General Assembly, given the substantial effect on the public interest of private individuals providing or offering to provide immigration assistance services, established rules of practice and conduct for such individuals in order to promote honesty and fair dealing with Illinois residents and preserve public confidence. 815 ILCS 505/2AA(a-1), (a-5) (West 2008). Licensed attorneys, legal interns under the direct supervision of a licensed attorney, not-for-profit organizations recognized by the Board of Immigration Appeals, employees of such organizations and certain organizations employing or seeking to employ an alien or nonimmigrant alien are exempt from the requirements of section 2AA. 815 ILCS 505/2AA(a-5) (West 2008).

---

[1] Black's Law Dictionary 794 (7th ed. 1999).

There is nothing to show defendants were exempt from section 2AA nor do they assert such.

Under section 2AA, any nonexempt person who provides or offers to provide immigration assistance service may perform only services such as translating and completing government forms, transcribing and/or translating responses to such forms, securing supporting documents, notarizing signatures and assorted other services. 815 ILCS 505/2AA(b) (West 2008). He may not make any statement that he "can or will obtain special favors from or has special influence with the United States Immigration and Naturalization Service or any other governmental agency" (815 ILCS 505/2AA(j)(1) (West 2008)); retain any compensation for service not performed (815 ILCS 505/2AA(j)(2) (West 2008)); provide legal advice, recommend a specific course of legal action or provide any other assistance that requires legal analysis, legal judgment or interpretation of the law or accept payment in exchange of such advice or assistance (815 ILCS 505/2AA(j)(2.5), (j)(5) (West 2008)); or "[m]ake any misrepresentation of false statement, directly or indirectly, to influence, persuade, or induce patronage" (815 ILCS 505/2AA(j)(6) (West 2008)).

Any person perfoming any of the authorized services must register with the Illinois Attorney General and submit verification of malpractice insurance or a surety bond (815 ILCS 505/2AA(c) (West 2008)); provide the customer with a written contract explaining the services and costs in English and in the customer's native language before performing any services (815 ILCS 505/2AA(d), (f) (West 2008)); and post a

sign, a separate sign for each language in which he offers immigration assistance services, at his place of business stating he is not attorney licensed to practice law and disclosing his fee schedule and assorted other information. 815 ILCS 505/2AA(e) (West 2008).

Persons violating section 2AA shall be guilty of a Class A misdemeanor for a first offense and Class 3 felony for second or subsequent offenses. 815 ILCS 505/2AA(m) (West 2008). If the Attorney General or State's Attorney fails to file an action under this section, any person may file a civil action to enforce the provisions of the section and maintain an action for injunctive relief, compensatory damages to recover prohibited fees. 815 ILCS 505/2AA(m) (West 2008). A prevailing plaintiff may be awarded three times the prohibited fees. 815 ILCS 505/2AA(m) (West 2008). Plaintiffs filed such a civil action here, seeking triple the amount they paid defendants pursuant to section 2AA(m).

Again taking the well-pleaded facts in plaintiffs' complaint as true, there is no question that defendants were providers of immigration assistance services. There is also no question that they, as plaintiffs asserted in their complaint, violated section 2AA when they (1) failed to provide plaintiffs with a written contract explaining services to be performed and compensation to be charged in violation of section 2AA(d); (2) failed to provide plaintiffs with a written contract in English and Spanish, the language spoken by plaintiffs, in violation of section 2AA(f); (3) failed to post signs with the mandated disclosures at Marco's Digital Photography in violation of section 2AA(e); (4) retained

plaintiffs' money after failing to obtain the promised documents, misrepresented to plaintiffs they could assist them in obtaining immigration documents and misrepresented that Castellanos was employed by the United States Consulate in Juarez, Mexico in violation of section 2AA(j); and (5) failed to file the required registration statement or verification of malpractice statement or surety bond in violation of section 2AA(c).

As plaintiffs point out, defendants are essentially arguing that the very actions that section 2AA attempts to curtail can be used as a defense to claims brought under section 2AA. Section 2AA was passed for the protection of people such as plaintiffs. The purpose of section 2AA can best be effectuated by recognizing plaintiffs' right to recovery. We find, therefore, that the court erred in dismissing plaintiffs' complaint on the basis of illegality of contract.

Statute of Limitations for Count I

In its order dismissing the complaint, the court did not mention defendants' alternate argument for dismissal of count I. Defendants had argued, pursuant to section 2-619(a)(5) of the Code, that the Consumer Fraud Act count should be dismissed because it was filed beyond the three-year statute of limitations for filing such actions. Neither party raises this ground for dismissal on appeal, so we need not consider it. However, since it may come up again on remand and there is no merit to this argument, we will address it briefly.

Under section 2-619(a)(5), dismissal may be had upon a showing that the

plaintiffs' action was not commenced within the time limit provided by law. 735 ILCS 5/2-619(5) (West 1992); *Streeter v. Chicago Transit Authority*, 272 Ill. App. 3d 921, 923, 651 N.E.2d 579, 580 (1995). The statute of limitations for an action under the Consumer Fraud Act is three years and begins to run when the cause of action accrues. 815 ILCS 505/10a(e) (West 2008); *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 376 Ill. App. 3d 1006, 1020-21 (2007). A cause of action that is not filed within the statute of limitations is time barred. 815 ILCS 505/10a(e) (West 2002); *Kopley Group V., L.P.,* 376 Ill. App. 3d at 1021.

Plaintiffs filed their cause of action on December 7, 2009. Accordingly, in order to meet the three-year statute of limitations for their Consumer Fraud Act claim, the claim had to accrue on or after December 7, 2006. Defendants asserted plaintiffs' cause of action accrued in October 2006, when Nava made his final payment. We disagree.

A cause of action under the Consumer Fraud Act accrues " 'when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. At that point the burden is upon the injured person to inquire further as to the existence of a cause of action.' " (Emphasis omitted.) *Kopley Group V., L.P.,* 376 Ill. App. 3d at 1021 (quoting *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981)). Taking the well-pleaded facts in plaintiffs' complaint as true for the purposes of the motion to dismiss, it is clear plaintiffs had no reason to know or suspect that they had been injured, let alone defrauded, in October 2006. Throughout the time

that plaintiffs were making their payments, April 2006 through October 2006, Alvarado consistently called one or all of them, sometimes weekly, asking for the money. He told plaintiffs that if the June 2006 deadline for payment was missed, the documents would be delayed by up to six months, and he even used the supposed delay as a form of threat on occasion. There would be no reason for plaintiffs to suspect in October 2006 that they were the victims of fraud: they knew the June deadline had been missed and therefore would not expect any documents until December 2006, at the earliest. Alvarado reinforced this expectation when, after receiving the last "late" payment in October 2006, he told Gamboa that, due to the delay in payment, the documents would not be ready until November or December 2006. It was, therefore, reasonable for plaintiffs to continue thinking through December 2006 that their agreement with Alvarado would be honored.

It was not until sometime after December 2006, when plaintiffs still had not received the promised documents and Alvarado stopped responding to their phone calls, that plaintiffs might have had reason to suspect something was wrong, that Alvarado might not deliver on the agreements. It is not clear from plaintiffs' complaint when such occurred, but it clearly occurred after December 2006, spanning a period of months, and ultimately years. Alvarado still strung Gamboa along as late as February 2007, when he told Gamboa he had to go to El Paso, "booked" Gamboa's airline reservations and then cancelled his trip at the last minute. From mid-2007 through 2009, Alvarado sporadically gave plaintiffs additional excuses for his failure to procure

15

the documents, put them in contact with Castellanos to verify the excuses, told them he'd been swindled too and much, much more. But, by that time, plaintiffs should have been aware that they had been injured and have investigated further. Accordingly, we find plaintiffs' cause of action under the Consumer Fraud Act accrued sometime in 2007, within the three-year statute of limitations for such actions.

For the reasons stated above, we reverse the order of the trial court and remand for further proceedings.

Reversed and remanded.

1-10-1623

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT
(Front Sheet to be Attached to Each case)

CESAR GAMBOA, RUBEN NAVA and MAURO LOPEZ,

Plaintiffs-Appellants,

v.

JOSE ALVARADO and MARCO'S DIGITAL VIDEO AND PHOTOGRAPHY, INC.,

Defendants-Appellees.

No. 1-10-1623

Appellate Court of Illinois
First District, Second Division

January 11, 2011

JUSTICE KARNEZIS delivered the opinion of the court.

CUNNINGHAM, P.J., and CONNORS, J., concurred.

Appeal from the Circuit Court of Cook County.

The Honorable William Maki, Judge Presiding.

For APPELLANTS:  Rivas & Becerra, of Chicago (Alonzo Rivas and Carlos G. Becerra, of counsel)

For APPELLEES:  Frank J. Del Medico, Ltd., and Hennessy & Cihak, P.C., of North Riverside (Frank J. Del Medico, of counsel)